**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NICE LTD., NICE SYSTEMS INC., and MATTERSIGHT CORP., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 18-02024-RGA-SRF |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| CALLMINER, INC., | ) ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs NICE Ltd., NICE Systems Inc. (collectively, "NICE"), and Mattersight Corporation ("Mattersight") (all together, "Plaintiffs"), by counsel and pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), hereby file the following First Amended Complaint against CallMiner Inc. ("CallMiner" or "Defendant"):

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, of U.S. Patent No. 6,246,752 ("the '752 patent"), U.S. Patent No. 6,252,946 ("the '946 patent"), U.S. Patent No. 6,785,370 ("the '370 patent"), U.S. Patent No. 6,937,706 ("the '706 patent"), U.S. Patent No. 7,599,475 ("the '475 patent"), U.S. Patent No. 7,714,878 ("the '878 patent"), U.S. Patent No. 8,023,639 ("the '639 patent"), U.S. Patent No. 8,204,884 ("the '884 patent"), U.S. Patent No. 8,553,872 ("the '872 patent"), U.S. Patent No. 8,611,523 ("the '523 patent"), U.S. Patent No. 8,694,307 ("the '307 patent"), U.S. Patent No. 9,942,400 ("the '400 patent"), U.S. Patent No. 10,021,248 ("the '248 patent"), and U.S. Patent No. 10,104,233 ("the '233 patent") (collectively, "the Asserted Patents"), owned by Plaintiffs. Plaintiffs assert these patents against CallMiner for, *inter alia*, the unauthorized making, using,

offering to sell, selling, and/or importing of instrumentalities practicing the subject matter claimed in the Asserted Patents ("Accused Instrumentalities").

**PARTIES**

2.      Plaintiff NICE Ltd. is a corporation organized under the laws of Israel having its principal place of business at 13 Zarhin Street, Ra'anana, Israel 4366241.

3.      Plaintiff NICE Systems Inc. is a corporation organized under the laws of the State of Delaware having its principal place of business at 221 River Street, 10th Floor, Hoboken, NJ 07030.

4.      Plaintiff Mattersight Corporation is a corporation organized under the laws of the State of Delaware having its principal place of business at 200 Madison Street, Suite 3100, Chicago, IL 60606.

5.      On information and belief, Defendant CallMiner is a corporation organized under the laws of the State of Delaware having a principal place of business at 200 West Street, Waltham, MA 02451. CallMiner has appointed Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, as its registered agent for service of process.

**JURISDICTION AND VENUE**

6.      This action arises under the patent laws of the United States, Title 35 U.S.C. §§ 1, *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

7.      On information and belief, this Court has personal jurisdiction over Defendant because Defendant is incorporated in the State of Delaware.

8.      On information and belief, this Court has personal jurisdiction over Defendant because Defendant has established minimum contacts with the forum such that the exercise of

personal jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

9.      On information and belief, Defendant has regularly and purposefully availed itself of the privilege of conducting business activities within Delaware and this Judicial District.  On information and belief, Defendant has purposefully availed itself of the rights and benefits of Delaware law and has engaged in systematic and continuous contacts with Delaware.  On information and belief, Defendants derive substantial revenue from the sale of infringing products and/or services in Delaware and have availed themselves of the privilege of conducting business within Delaware.

10.     On information and belief, personal jurisdiction is proper because CallMiner has committed acts of infringement in this Judicial District.  This Court has personal jurisdiction over Defendant because, *inter alia*, this action arises from activities Defendant directed towards Delaware.

11.     Exercising personal jurisdiction over Defendant in this District would not be unreasonable given Defendant's contacts in this District, the interest in this District of resolving disputes related to products and/or services sold herein, and the harm that would occur to Plaintiffs, including Plaintiff NICE Systems Inc., which is a Delaware corporation.

12.     On information and belief, Defendant CallMiner has appointed Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, as its registered agent.

13.     This Court also has personal jurisdiction over Defendant under 10 Del. C. § 3104. On information and belief, Defendant satisfies at least § 3104(c)(1) ("[t]ransacts any business or performs any character of work or service in the State"), § 3104(c)(2) ("[c]ontracts to supply services or things in this State,") § 3104(c)(3) ("[c]auses tortious injury in the State by an act or

omission in this State"), and/or § 3104(c)(4) ("[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State"), among other paragraphs of § 3104(c).

14. For these reasons and for other reasons that will be presented to the Court if jurisdiction is challenged, the Court has personal jurisdiction over Defendant.

15. Venue is proper under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because Defendant is in incorporated in the State of Delaware and thus resides in this Judicial District, and the infringing activity has occurred and continues to occur in this Judicial District.

## FACTUAL BACKGROUND

16. The USPTO issued the '752 patent on June 12, 2001. The '752 patents bears the title "System and Method for Data Recording." A true and accurate copy of the '752 patent is attached as Exhibit 1.

17. Plaintiff NICE Systems Inc. is the owner and assignee of all rights, title, and interest in the '752 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

18. The USPTO issued the '946 patent on June 26, 2001. The '946 patent bears the title "System and Method for Integrating Call Record Information." A true and accurate copy of the '946 patent is attached as Exhibit 2.

19. Plaintiff NICE Systems Inc. is the owner and assignee of all rights, title, and interest in the '946 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

20.     The USPTO issued the '370 patent on August 31, 2004.  The '370 patent bears the title "System and Method for Integrating Call Record Information."  A true and accurate copy of the '370 patent is attached as Exhibit 3.

21.     Plaintiff NICE Systems Inc. is the owner and assignee of all rights, title, and interest in the '370 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

22.     The USPTO issued the '706 patent on August 30, 2005.  The '706 patent bears the title "System and Method for Data Recording."  A true and accurate copy of the '706 patent is attached as Exhibit 4.

23.     Plaintiff NICE Systems Inc. is the owner and assignee of all rights, title, and interest in the '706 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

24.     The USPTO issued the '475 patent on October 6, 2009.  The '475 patent bears the title "Method and Apparatus for Generic Analytics."  A true and accurate copy of the '475 patent is attached as Exhibit 5.

25.     Plaintiff NICE Ltd. is the owner and assignee of all rights, title, and interest in the '475 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

26.     The USPTO issued the '878 patent on May 11, 2010.  The '878 patent bears the title "Apparatus and Method for Multimedia Content Based Manipulation."  A true and accurate copy of the '878 patent is attached as Exhibit 6.

27.     Plaintiff NICE Ltd. is the owner and assignee of all rights, title, and interest in the '878 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

28.     The USPTO issued the '639 patent on September 20, 2011.  The '639 patent bears the title "Method and System Determining the Complexity of a Telephonic Communication Received by a Contact Center."  A true and accurate copy of the '639 patent is attached as Exhibit 7.

29.     Plaintiff Mattersight is the owner and assignee of all rights, title, and interest in the '639 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

30.     The USPTO issued the '872 patent on October 8, 2013.  The '872 patent bears the title "Method and System for Managing a Quality Process."  A true and accurate copy of the '872 patent is attached as Exhibit 8.

31.     Plaintiff NICE Ltd. is the owner and assignee of all rights, title, and interest in the '872 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

32.     The USPTO issued the '523 patent on December 17, 2013.  The '523 patent bears the title "Methods and Systems for Determining Segments of a Telephonic Communication Between a Customer and a Contact Center to Classify Each Segment of the Communication, Assess Negotiations, and Automate Setup Time Calculation."  A true and accurate copy of the '523 patent is attached as Exhibit 9.

33.     Plaintiff Mattersight is the owner and assignee of all rights, title, and interest in the '523 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

34.     The USPTO issued the '307 patent on April 8, 2014.  The '307 patent bears the title "Method and Apparatus for Temporal Speech Scoring."  A true and accurate copy of the '307 patent is attached as Exhibit 10.

35.     Plaintiff NICE Ltd. is the owner and assignee of all rights, title, and interest in the '307 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

36.     The USPTO issued the '248 patent on July 10, 2018.  The '248 patent bears the title "Method and System for Analyzing Caller Interaction Event Data."  A true and accurate copy of the '248 patent is attached as Exhibit 11.

37.     Plaintiff Mattersight is the owner and assignee of all rights, title, and interest in the '248 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

38.     The USPTO issued the '233 patent on October 16, 2018.  The '233 patent bears the title "Coaching Portal and Methods Based on Behavioral Assessment Data."  A true and accurate copy of the '233 patent is attached as Exhibit 12.

39.     Plaintiff Mattersight is the owner and assignee of all rights, title, and interest in the '233 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

40. The USPTO issued the '400 patent on April 10, 2018. The '400 patent bears the title "System and Methods for Analyzing Multichannel Communications Including Voice Data." A true and accurate copy of the '400 patent is attached as Exhibit 26.

41. Plaintiff Mattersight is the owner and assignee of all rights, title, and interest in the '400 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

42. The USPTO issued the '884 patent on June 19, 2012. The '884 patent bears the title "Method, Apparatus and System for Capturing and Analyzing Interaction Based Content." A true and accurate copy of the '884 patent is attached as Exhibit 27.

43. Plaintiff NICE Ltd. is the owner and assignee of all rights, title, and interest in the '884 patent, and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

## Plaintiffs NICE and Mattersight

44. NICE is a pioneer in the field of cloud-based and on-premises enterprise software solutions, empowering organizations to better understand their data and make smarter decisions based on advanced analytics. Founded in 1986, NICE is one of the largest and most senior technology companies in Israel, with customers that include over 25,000 organizations in more than 150 countries and over 85 Fortune 100 companies. Customers of every industry and size rely on NICE's capabilities to deliver better customer service, maintain compliance, combat fraud, and safeguard the public. NICE's leading-edge solutions achieve these and other capabilities through advances in a variety of technical fields, including big data capture and analysis, multi-channel interaction recording, financial crime solutions, customer experience management solutions, workforce optimization, customer journey solutions, omnichannel recording, and workforce engagement management.

45.     NICE and its affiliates protect these technologies and share their benefits with the public through robust investment in patent systems around the globe.  NICE has played an active role in worldwide patent development since the 1980s.  To date, NICE and its affiliates own over 330 granted patents, including over 290 granted patents in the United States, and have nearly 80 pending patent applications.  These patents form the backbone of several technology sectors and are highly regarded in their industries.  By way of example, the Asserted Patents have been cited in patents and patent applications owned by International Business Machines (IBM), Microsoft, AT&T, Motorola, Cisco, Nokia, Toshiba, Research in Motion (now BlackBerry), and Nintendo.

46.     Mattersight Corporation is a world leader is SaaS-based behavioral analytics software.  Founded in Chicago in 1994, Mattersight Corporation develops industry-driving customer analytics, speech analytics, and behavioral analytics technologies to companies around the world.

47.     In 2018, NICE acquired Mattersight for its industry-leading, cloud-based behavioral analytics capabilities.  Mattersight's innovations in the data analytics field further enable organizations to improve customer interactions and boost customer service agent performance.

48.     The pioneering work of NICE and its affiliates substantially predates CallMiner and laid the foundation upon which CallMiner's entire business is based.

### Defendant CallMiner

49.     CallMiner was founded in 2002 and develops and sells customer service and call center software and services. CallMiner markets itself as providing a cloud-based, customer engagement and speech analytics platform that enables customer interactions to be captured, transcribed, and analyzed to improve the customer experience, contact center optimization, sale effectiveness and risk mitigation performance. *See, e.g.*, *CallMiner Eureka*, CALLMINER,

https://callminer.com/ products/platform.  In addition to its cloud-based solutions, CallMiner also markets the Accused Instrumentalities as being deployed on-site within the premises of its customers.  *See, e.g.*, *The Inner Circle Guide to Customer Contact Analytics*, CALLMINER, at 46, https://callminer.com/wp-content/whitepapers/ICGCCA-CallMiner-US.pdf.

50.     CallMiner has and continues to make, use, sell, offer to sell, and/or import into the United States Accused Instrumentalities infringing the claims of the Asserted Patents.  By way of nonlimiting example, the Accused Instrumentalities include CallMiner's Eureka software and related software modules and services.

51.     Prior to the filing of this Amended Complaint, CallMiner was on notice of twelve of the Asserted Patents by virtue of Plaintiffs' filing of the original Complaint on December 19, 2018.  The original Complaint included detailed claim charts outlining how the Accused Instrumentalities infringe twelve of the Asserted Patents.  *See* Ex. 1-12.  CallMiner was served with the original Complaint at least by December 27, 2018, and returned a waiver of service on December 28, 2018.  On information and belief, CallMiner's infringing conduct has continued unabated since it received notice.

52.     Moreover, since receiving notice, CallMiner has escalated its infringing conduct by, for example, partnering with Morae Global Corporation on February 21, 2019, which it describes as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential noncompliant behavior."  Ex. 25. On information and belief, CallMiner's escalated infringing conduct has continued unabated since at least February 21, 2019.

## FIRST CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 7,599,475

53.     The allegations of Paragraphs 1-52 are incorporated by reference as if fully set forth herein.

54.     The '475 patent is valid and enforceable.

55.     The '475 patent addresses several technical problems in the field of speech analytics.  As one nonlimiting example, existing systems could not extract information from segments of audio data in various types of media in an automated and efficient manner.  *See, e.g.*, Ex. 5, 1:16-46.  As a result, these systems produced inaccurate and inefficient analyses, causing companies to take improper or untimely actions in the process.  Moreover, existing analytics systems required transcription of an entire interaction to perform their analysis.  *See, e.g.*, *id.*, 1:56-2:7.  These systems were computationally expensive and wasteful, often relying on limited word-spotting algorithms with sparse vocabularies.  *Id.*  Using such unsophisticated systems introduced a number of drawbacks in prior art systems, including their inability to efficiently parse large volumes of transcribed call data.  *See, e.g.*, *id.*, 1:56-2:7.

56.     The '475 patent provides an unconventional, technical solution to these problems in part by providing an automated system for efficient processing of audio data by activating an initial processing of audio into segments.  *See, e.g.*, *id.*, 2:11-24.  Once segmented, the system may dedicate more resource-intensive processing to the segments and their areas surrounding the segments.  *See, e.g.*, *id.*  This approach minimizes unnecessary expenditure of computational resources by focusing the audio processing only on the segments of interest and adjacent areas. *See, e.g.*, *id.*  It also facilitates more efficient and effective retrieval functionality for transcribed texts.  *See, e.g.*, *id.*, 7:62:-8:27.  The '475 patent accomplishes these and other advances by locating events within an audio signal—such as the use of a particular word or phrase—and conducting

additional processing on the audio surrounding the located event. *See, e.g.*, *id.*, 2:11-24. The combination of elements described and claimed in the '475 patent were unknown in the prior art and provided significant advantages over existing systems.

57.    CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '475 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '475 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 17, herein incorporated by reference.

58.    Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '475 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '475 patent.

59.    Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '475 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These instrumentalities constitute a material part of the invention of the '475 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

60.    Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '475 patent under 35 U.S.C. § 271, either literally and/or

under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority. These instrumentalities constitute at least a component part of the invention of the '475 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

61. Defendant has had actual knowledge of the '475 patent at least by December 27, 2018 by virtue of Plaintiffs' original Complaint and service of the same (D.I. 1, 4), providing notice of the patent and detailing CallMiner's infringement.

62. Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement. CallMiner's ongoing infringement is willful and deliberate, as CallMiner became aware of the infringing nature of the Accused Instrumentalities at least by December 27, 2018, the date CallMiner received service of the original Complaint. Despite having actual knowledge of the '475 patent, CallMiner has continued its infringing activities. On information and belief, CallMiner has furthermore escalated its infringing behavior by, for example, partnering with Morae Global Corporation, which it described in an announcement on February 21, 2019 as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential noncompliant behavior." Ex. 25. This continued and escalating infringement is willful and deliberate.

63. Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '475 patent. This irreparable harm will continue unless this Court enjoins Defendant.

64. CallMiner's conduct in infringing the '475 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## SECOND CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 10,104,233

65. The allegations of Paragraphs 1-64 are incorporated by reference as if fully set forth herein.

66. The '233 patent is valid and enforceable.

67. The '233 patent addressed several technical problems in the field of call center management systems and data visualization. As one nonlimiting example, existing call management systems were incapable of providing real-time feedback to a customer service representative based on a customer's perception of an interaction. *See, e.g.*, Ex. 12, 1:56-2:10. Instead, these systems relied on inefficient, time-consuming, and unrepresentative post-call surveys from willing participants. *See, e.g.*, *id.* Existing call center solutions also suffered from the inability to provide an automatic, quantitative assessment of a customer's satisfaction level during an interaction. *See, e.g.*, *id.*, 2:2-10. These past systems could not provide "insight into the reasons for an experiential outcome," thereby offering managers with little value as to how or why their agents achieved certain results. *See, e.g.*, *id.*, 2:29-39. For example, prior art systems could not dynamically compute agent quality as a function of behavioral metrics such as empathy and politeness events. Moreover, existing systems did not display call events together in a time-based graphical user interface to aid in the visualization of these events. As such, call center operators

were unable to visually assess the location of important call events during the lifetime of a particular call.

68. The '233 patent provides an unconventional, technical solution to these problems in part by applying a linguistic-based psychological behavior analysis model to a communication between an agent and a caller. *See, e.g.*, *id.*, 3:9-41, 3:45-64. The patent uses this linguistic model to derive interaction events that can be categorized, scored, and graphically-displayed to interested parties in real-time. *See, e.g.*, *id.* The detected events may include, for example, phone events, measure distressed events, or duration data for a call. *See, e.g.*, *id.*, 26:28-46. The patent also describes unconventional ways of depicting the results of its processing, such as depicting selected events in a time-based manner across a given time interval. The combination of elements disclosed and claimed were unknown in the prior art and provided significant advantages over existing systems.

69. CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '233 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '233 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 24, herein incorporated by reference.

70. Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '233 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '233 patent.

71. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '233 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These instrumentalities constitute a material part of the invention of the '233 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

72. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '233 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority. These instrumentalities constitute at least a component part of the invention of the '233 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

73. Defendant has had actual knowledge of the '233 patent at least by December 27, 2018 by virtue of Plaintiffs' original Complaint and service of the same (D.I. 1, 4), providing notice of the patent and detailing CallMiner's infringement.

74. Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement. CallMiner's ongoing infringement is willful and deliberate, as CallMiner became aware of the infringing nature of the Accused Instrumentalities at

least by December 27, 2018, the date CallMiner received service of the original Complaint. Despite having actual knowledge of the '233 patent, CallMiner has continued its infringing activities. On information and belief, CallMiner has furthermore escalated its infringing behavior by, for example, partnering with Morae Global Corporation, which it described in an announcement on February 21, 2019 as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential noncompliant behavior." Ex. 25. This continued and escalating infringement is willful and deliberate.

74. Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '233 patent. This irreparable harm will continue unless this Court enjoins Defendant.

76. CallMiner's conduct in infringing the '233 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## THIRD CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 8,694,307

77. The allegations of Paragraphs 1-76 are incorporated by reference as if fully set forth herein.

78. The '307 patent is valid and enforceable.

79. The '307 patent addresses several technical problems arising in the field of call center management systems. As one nonlimiting example, prior systems failed to accurately, reliably, and quantitatively assess emotion, stress, and agitation in speakers' voices during telephonic interactions. *See, e.g.*, Ex. 10, 3:6-57. These systems thus suffered from the drawback of being unable to provide real-time, accurate speech analytics to callers based on a quantitative

evaluation of their present psychological state. For example, prior systems could not "determin[e] whether a verbal interaction between participants require[d] intervention by an authority" in an automated, reliable fashion. *See, e.g.*, *id.*, 3:20-25. As another nonlimiting example, prior systems failed to determine speakers' emotional states using both verbal and nonverbal characteristics in a quantitative fashion. *See, e.g.*, *id.*, 3:6-19. As such, call centers used speech analytics engines that provided results that were unreliable, inaccurate, and difficult to replicate. *See, e.g.*, *id.*

80. The '307 patent provides an unconventional, nonroutine technical solution to these problems in part by using a voice acquisition apparatus to "detect[] and analyze[] temporal variations in the speech of speakers" in a verbal communication. *See, e.g.*, *id.*, 3:26-40. These characteristics may include both verbal and nonverbal expressions such as, among other things, silence periods, tempo, and volume of spoken words. *See, e.g.*, *id.*, 7:1-22. The '307 patent describes correlating the derived characteristics with reference speech patterns to deduce quantitative modes of behavior based on that analysis. *See, e.g.*, *id.*, 3:26-40, 8:20-27. This methodology enables organizations to monitor volumes of calls and call data that would otherwise be prohibitively cumbersome due to the "time and cost" to do so manually. *See, e.g.*, *id.*, 3:47-50. The disclosed embodiments also improve the efficiency, efficacy, and reliability of automated speech analysis engines in unconventional ways by providing a new structure to previously unstructured data. *See, e.g.*, *id.*, 3:6-57. The patent also enables call centers to isolate calls requiring direct intervention in a quantitative, real-time fashion based on detected stress levels of the speakers. *See, e.g.*, *id.*, 3:20-25, 3:51-55, 6:46-58. Broadly speaking, the specification and claims of the '307 patent embody novel and unconventional methods of automated speech analytics by automatically detecting and analyzing temporal characteristics of an audio signal— including the emotional, dialog, and accent features of the interaction—to quantitatively rate and

classify verbal interactions between speakers. *See, e.g.*, *id.*, 3:26-40. This combination of elements was unknown in the prior art and enabled significant, technical advantages over those prior art systems.

81. CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '307 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '307 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 22, herein incorporated by reference.

82. Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '307 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '307 patent.

83. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '307 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These instrumentalities constitute a material part of the invention of the '307 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

84. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '307 patent under 35 U.S.C. § 271, either literally and/or

under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority. These instrumentalities constitute at least a component part of the invention of the '307 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

85.     Defendant has had actual knowledge of the '307 patent at least by December 27, 2018 by virtue of Plaintiffs' original Complaint and service of the same (D.I. 1, 4), providing notice of the patent and detailing CallMiner's infringement.

86.     Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement. CallMiner's ongoing infringement is willful and deliberate, as CallMiner became aware of the infringing nature of the Accused Instrumentalities at least by December 27, 2018, the date CallMiner received service of the original Complaint. Despite having actual knowledge of the '307 patent, CallMiner has continued its infringing activities. On information and belief, CallMiner has furthermore escalated its infringing behavior by, for example, partnering with Morae Global Corporation, which it described in an announcement on February 21, 2019 as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential noncompliant behavior." Ex. 25. This continued and escalating infringement is willful and deliberate.

87. Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '307 patent. This irreparable harm will continue unless this Court enjoins Defendant.

88. CallMiner's conduct in infringing the '307 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## FOURTH CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 8,553,872

89. The allegations of Paragraphs 1-88 are incorporated by reference as if fully set forth herein.

90. The '872 patent is valid and enforceable.

91. The '872 patent addresses several technical problems arising in the field of call center management systems. As one nonlimiting example, the '872 patent solves the problem of screening calls for evaluation in a quantitative and automated fashion when those calls satisfy certain quality metrics. At the time of the '872 patent, call centers could not assess the quality of call center agents across multiple, distinct calls in real time. Instead, supervisors at call centers assessed the quality of their agents by reviewing calls selected at random from a database. *See, e.g.*, Ex. 8, 1:24-40, 3:3-18, 3:32-36. As the volume and variability of the fielded calls grew, this pick-and-choose approach quickly became "overwhelming," "time consuming," and "ineffective," as randomly selected calls were not necessarily representative of larger call phenomena and would not reveal systemic issues with agent performance. *See, e.g.*, *id.* This approach suffered from several drawbacks, including a limited ability to monitor agents' performances in an accurate, effective, and efficient manner.

92. The '872 patent provides a technological and unconventional solution to these and other problems in part by applying a speech analytics engine to audio data and automatically

selecting, classifying, and presenting calls for evaluation based on an array of quantitative metrics. *See, e.g.*, *id.*, 3:19-46, 3:63-4:6, 6:58-62. The patent describes various embodiments for automatically detecting breaches in key performance indicators (KPI) in real-time, graphically depicting this breach on a display and automatically taking remedial action in response. *See, e.g.*, *id.*, 4:48-63, 6:19-30, 7:66-8:9, 10:46-50, 12:22-34. The '872 patent thus helps overcome the prohibitive complexity of retrieving, analyzing, quantitively rating, and automatically pushing critical call data when the universe of raw data is extensive. *See, e.g.*, *id.*, 1:24-40, 3:19-4:6. In addition, the '872 patent provides the ability to push these analyses directly to call agents, obviating the need in prior art systems for agents to pull this information themselves. The combination of elements described and claimed in the '872 patent was unknown in the art and enabled significant advances over those prior art systems.

93. CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '872 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '872 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 20, herein incorporated by reference.

94. Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '872 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '872 patent.

95.     Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '872 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software.    These instrumentalities constitute a material part of the invention of the '872 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

96.     Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '872 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority.   These instrumentalities constitute at least a component part of the invention of the '872 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.    Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

97.     Defendant has had actual knowledge of the '872 patent at least by December 27, 2018 by virtue of Plaintiffs' original Complaint and service of the same (D.I. 1, 4), providing notice of the patent and detailing CallMiner's infringement.

98.     Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement.   CallMiner's ongoing infringement is willful and deliberate, as CallMiner became aware of the infringing nature of the Accused Instrumentalities at

least by December 27, 2018, the date CallMiner received service of the original Complaint. Despite having actual knowledge of the '872 patent, CallMiner has continued its infringing activities. On information and belief, CallMiner has furthermore escalated its infringing behavior by, for example, partnering with Morae Global Corporation, which it described in an announcement on February 21, 2019 as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential noncompliant behavior." Ex. 25. This continued and escalating infringement is willful and deliberate.

99.     Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '872 patent. This irreparable harm will continue unless this Court enjoins Defendant.

100.    CallMiner's conduct in infringing the '872 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## FIFTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 6,246,752

101.    The allegations of Paragraphs 1-100 are incorporated by reference as if fully set forth herein.

102.    The '752 patent is valid and enforceable.

103.    The '752 patent addresses several technical problems in the field of telephony call monitoring and recording. As one nonlimiting example, certain call recording technologies would compile call records from multiple, disparate data sources as independent records. *See, e.g.*, Ex. 1, 2:37-50, 28:65-29:4. This approach resulted in inefficient and redundant storage, as data from a single call would be stored multiple times and in separate call records. *See, e.g.*, *id.* Such call

fragmentation also made call record searching and retrieval less efficient, as fragmented retrieval of partial records failed to reveal instances when disparate records pertained to the same communication. *See, e.g.*, *id.* The foregoing problems arose in part because certain "trunk-side" communication lines—such as the DEFINITY G3 PBX used in North America—would assign calls to channels dynamically, making it impossible to "predict[] in advance" whether a given call was related to another previously hosted over the network. *See, e.g.*, *id.*, 1:54-3:2, 28:65-29:4. For example, certain prior systems could not detect that call data from two legs of a transferred or conferenced call were logically related and thus should be stored together. *See, e.g.*, *id.*, 21:5-22. Other systems—such as those relying on Station Message Detail Recording (SMDR) links—could not provide call channel information during an active call. *See, e.g.*, *id.*, 1:54-3:2, 28:65-29:4. These systems could therefore not support telephony services requiring "features and capabilities dependent on real-time data." *See, e.g.*, *id.* For example, prior systems could not support call centers needing to dynamically determine whether to record specific telephone calls, live display active calls, or monitor audio traffic. *See, e.g.*, *id.*, 2:24-36.

104. The '752 patent provides a technical and unconventional solution to this and other problems via an efficient call data merging and archival methodology. In one aspect, the '752 patent associates call records for the same call from various sources (e.g., real-time CTI links and SMDR links) to overcome shortcomings of prior systems:

> Generally, the functionality of the system involves tapping into activity on a PBX (Private Branch Exchange) by intercepting audio on either the trunk or station side of a telephone call. The tapped audio is then redirected as input to a channel on a Digital Signal Processor (DSP) based voice processing board, which in turn is digitized into program addressable buffers. The recorded digitized audio is then combined with descriptive information ("metadata") obtained through a Computer Telephony Integration (CTI) communications link with the PBX, and stored as a single manageable unit ("Voicedata") to facilitate its subsequent search and retrieval.
>
> . . . .

> [T]he CTI Server of the preferred embodiment accepts data from a PBX or similar equipment in a telephone switch environment, and can use both real-time CTI communications links and asynchronous information sources such [as] the Station Message Detail Recording (SMDR) interface. The CTI Server translates and combines the various types of input data into a unified, normalized format.

*Id.*, 4:66-5:11, 6:37-43; *see also, e.g.*, *id.*, 3:5-23, 5:15-45, 7:9-10:48. Combining call data from synchronous and asynchronous sources provides several technical advances over the prior systems, such as reducing memory usage, greatly simplifying and reducing the work necessary to perform search, retrieval, and archival operations, and offering a more natural and flexible framework for controlling security access to the recording. *See, e.g.*, *id.*, 29:4-8, 29:40-51, Figs. 1, 2, 15. The patent also provides an unconventional, technical solution to the foregoing issues by simultaneously providing real-time and asynchronous data monitoring within single, unified call instance. *See, e.g.*, *id.*, 2:65-3:2, 4:66-5:14, Figs. 1, 2, 15. At the time of the invention, it was not a trivial task to merge call data as described and claimed for a host of technical reasons. *See, e.g.*, *id.*, 9:28-10:7. For example, SMDR and CTI links do not share common reference identification numbers and measure call durations using different units. *See, e.g.*, *id.* The combination of elements described and claimed in the '752 patent was thus unknown in the prior art and provided significant advantages over prior art systems.

105. CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '752 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '752 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart

setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 13, herein incorporated by reference.

106. Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '752 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '752 patent.

107. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '752 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These instrumentalities constitute a material part of the invention of the '752 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

108. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '752 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority. These instrumentalities constitute at least a component part of the invention of the '752 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

109. Defendant has had actual knowledge of the '752 patent at least by December 27, 2018 by virtue of Plaintiffs' original Complaint and service of the same (D.I. 1, 4), providing notice of the patent and detailing CallMiner's infringement.

110. Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement. CallMiner's ongoing infringement is willful and deliberate, as CallMiner became aware of the infringing nature of the Accused Instrumentalities at least by December 27, 2018, the date CallMiner received service of the original Complaint. Despite having actual knowledge of the '752 patent, CallMiner has continued its infringing activities. On information and belief, CallMiner has furthermore escalated its infringing behavior by, for example, partnering with Morae Global Corporation, which it described in an announcement on February 21, 2019 as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential noncompliant behavior." Ex. 25. This continued and escalating infringement is willful and deliberate.

111. Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '752 patent. This irreparable harm will continue unless this Court enjoins Defendant.

112. CallMiner's conduct in infringing the '752 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## SIXTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 6,937,706

113. The allegations of Paragraphs 1-112 are incorporated by reference as if fully set forth herein.

114.    The '706 patent is valid and enforceable.

115.    The '706 patent addresses several technical problems in the field of telephony call monitoring and recording.  As one nonlimiting example, certain call recording technologies would compile call records from multiple, disparate data sources as independent records.  *See, e.g.*, Ex. 4, 2:40-53, 28:37-43.  This approach resulted in inefficient and redundant storage, as data from a single call would be stored multiple times and in separate call records.  *See, e.g.*, *id.*  Such call fragmentation also made call record searching and retrieval less efficient, as fragmented retrieval of partial records failed to reveal instances when disparate records pertained to  the same communication.  *See, e.g.*, *id*.  The foregoing problems arose in part because certain "trunk-side" communication lines—such as the DEFINITY G3 PBX used in North America—would assign calls to channels dynamically, making it impossible to "predict[] in advance" whether a given call was related to another previously hosted over the network.  *See, e.g.*, *id.*, 1:57-3:5, 28:37-43.  For example, certain prior systems could not detect that call data from two legs of a transferred or conferenced call were logically related and thus should be stored together.  *See, e.g.*, *id.*, 21:7-25.  Other systems—such as those relying on Station Message Detail Recording (SMDR) links—could not provide call channel information during an active call.  *See, e.g.*, *id.*, 1:57-3:5, 28:37-43.  These systems could therefore not support telephony services requiring "features and capabilities dependent on real-time data." *See, e.g.*, *id.*  For example, prior art systems could not support call centers needing to dynamically determine whether to record specific telephone calls, live display active calls, or monitor audio traffic.  *See, e.g.*, *id.*, 2:27-39.

116.    The '706 patent provides a technical and unconventional solution to this and other problems via an efficient call data merging and archival methodology.  In one aspect, the '752

patent in part merges call records associated with the same call from various sources (e.g., real-time CTI links and SMDR links) to overcome shortcomings of the prior art:

> Generally, the functionality of the system involves tapping into activity on a PBX (Private Branch Exchange) by intercepting audio on either the trunk or station side of a telephone call. The tapped audio is then redirected as input to a channel on a Digital Signal Processor (DSP) based voice processing board, which in turn is digitized into program addressable buffers. The recorded digitized audio is then combined with descriptive information ("metadata") obtained through a Computer Telephony Integration (CTI) communications link with the PBX, and stored as a single manageable unit ("Voicedata") to facilitate its subsequent search and retrieval.
>
> . . . .
>
> [T]he CTI Server of the preferred embodiment accepts data from a PBX or similar equipment in a telephone switch environment, and can use both real-time CTI communications links and asynchronous information sources such [as] the Station Message Detail Recording (SMDR) interface. The CTI Server translates and combines the various types of input data into a unified, normalized format.

*Id.*, 5:4-15, 6:40-46; *see also, e.g.*, *id.*, 3:8-26, 5:20-49, 7:10-10:52.  Combining call data from synchronous and asynchronous sources provides several technical advances over the prior systems, such as reducing memory usage, greatly simplifying and reducing the work necessary to perform search, retrieval, and archival operations, and offering a more natural and flexible framework for controlling security access to the recording.  *See, e.g.*, *id.*, 28:43-47, 29:12-23, Figs. 1, 2, 15.  The patent also provides an unconventional, technical solution to the foregoing issues by simultaneously providing real-time and asynchronous data monitoring within single, unified call instance.  *See, e.g.*, *id.*, 3:1-5, 5:3-19, Figs. 1, 2, 15.  At the time of the invention, it was not a trivial task to merge call data as described and claimed for a host of technical reasons.  *See, e.g.*, *id.*, 9:30-10:10.  For example, SMDR and CTI links do not share common reference identification numbers and measure call durations using different units.  *See, e.g.*, *id.*  The combination of elements

described and claimed in the '752 patent was thus unknown in the prior art and provided significant advantages over prior art systems.

117.    CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '706 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '706 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 16, herein incorporated by reference.

118.    Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '706 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '706 patent.

119.    Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '706 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These instrumentalities constitute a material part of the invention of the '706 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

120.    Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '706 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United

States the Accused Instrumentalities, including the Eureka software, without authority. These instrumentalities constitute at least a component part of the invention of the '706 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

121. Defendant has had actual knowledge of the '706 patent at least by December 27, 2018 by virtue of Plaintiffs' original Complaint and service of the same (D.I. 1, 4), providing notice of the patent and detailing CallMiner's infringement.

122. Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement. CallMiner's ongoing infringement is willful and deliberate, as CallMiner became aware of the infringing nature of the Accused Instrumentalities at least by December 27, 2018, the date CallMiner received service of the original Complaint. Despite having actual knowledge of the '706 patent, CallMiner has continued its infringing activities. On information and belief, CallMiner has furthermore escalated its infringing behavior by, for example, partnering with Morae Global Corporation, which it described in an announcement on February 21, 2019 as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential noncompliant behavior." Ex. 25. This continued and escalating infringement is willful and deliberate.

123.    Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '706 patent. This irreparable harm will continue unless this Court enjoins Defendant.

124.    CallMiner's conduct in infringing the '706 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## SEVENTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 6,785,370

125.    The allegations of Paragraphs 1-124 are incorporated by reference as if fully set forth herein.

126.    The '370 patent is valid and enforceable.

127.    The '370 patent addresses several technical problems in the field of telephony call monitoring and recording. As one nonlimiting example, certain call recording technologies would compile call records from multiple, disparate data sources as independent records. *See, e.g.*, Ex. 3, 2:41-54, 30:31-42. This approach resulted in inefficient and redundant storage, as data from a single call would be stored multiple times and in separate call records. *See, e.g.*, *id.* Such call fragmentation also made call record searching and retrieval less efficient, as fragmented retrieval of partial records failed to reveal instances when disparate records pertained to the same communication. *See, e.g.*, *id.* The foregoing problems arose in part because certain "trunk-side" communication lines—such as the DEFINITY G3 PBX used in North America—would assign calls to channels dynamically, making it impossible to "predict[] in advance" whether a given call was related to another previously hosted over the network. *See, e.g.*, *id.*, 1:58-3:14. For example, certain prior art systems could not detect that call data from two legs of a transferred or conferenced call were logically related and thus should be stored together. *See, e.g.*, *id.*, 21:66-22:44. Other systems—such as those relying on Station Message Detail Recording (SMDR) links—could not

provide call channel information during an active call. *See, e.g., id.*, 1:58-3:14. These systems could therefore not support telephony services requiring "features and capabilities dependent on real-time data." *See, e.g., id.* The shortcomings of conventional systems were particularly acute when calls were held, transferred, or conferenced. For example, certain prior art systems could not detect that call data from two legs of a transferred or conferenced call were logically related and thus should be stored together. *See, e.g., id.*, 2:32-40, 8:9-25, 21:66-22:44 ("Associations between related events were made difficult in certain cases because the call identification numbers given by a PBX may change after a call has been transferred or conferenced, or the numbers may be recycled and reused over time."). In addition, prior systems could not support call centers needing to dynamically determine whether to record specific telephone calls, live display active calls, or monitor audio traffic. *See, e.g., id.*, 2:28-40.

128. The '370 patent provides a technical and unconventional solution to this and other problems via an efficient call data merging and archival methodology. In one aspect, the '370 patent in part merges call records associated with the same call from various sources (e.g., real-time CTI links and SMDR links) to overcome shortcomings of the prior art:

> Generally, the functionality of the system involves tapping into activity on a PBX (Private Branch Exchange) by intercepting audio on either the trunk or station side of a telephone call. The tapped audio is then redirected as input to a channel on a Digital Signal Processor (DSP) based voice processing board, which in turn is digitized into program addressable buffers. The recorded digitized audio is then combined with descriptive information ("metadata") obtained through a Computer Telephony Integration (CTI) communications link with the PBX, and stored as a single manageable unit ("Voicedata") to facilitate its subsequent search and retrieval.
>
> . . . .
>
> [T]he CTI Server of the preferred embodiment accepts data from a PBX or similar equipment in a telephone switch environment, and can use both real-time CTI communications links and asynchronous information sources such [as] the Station Message Detail Recording (SMDR) interface. The CTI Server

translates and combines the various types of input data into a unified, normalized format.

*Id.*, 4:26-38, 5:63-6:2; *see also, e.g.*, *id.*, 3:17-30, 4:42-5:4, 6:35-10:11. Combining call data from synchronous and asynchronous sources provides several technical advances over the prior art systems, such as reducing memory usage, greatly simplifying and reducing the work necessary to perform search, retrieval, and archival operations, and offering a more natural and flexible framework for controlling security access to the recording. *See, e.g.*, *id.*, 31:7-19, Figs. 1, 2, 10, 13, 15, 22A. The patent also provides an unconventional, technical solution to the foregoing issues by simultaneously merging telephony event data from various locations within single, unified call instance. *See, e.g.*, *id.*, 3:2-14, 4:26-41, 8:26-44, Figs. 1, 2, 10, 13, 15. At the time of the invention, it was not a trivial task to merge call data as described and claimed for a host of technical reasons. *See, e.g.*, *id.*, 8:61-9:37. For example, SMDR and CTI links do not share common reference identification numbers and measure call durations using different units. *See, e.g.*, *id.* The combination of elements described and claimed in the '370 patent was thus unknown in the prior art and provided significant advantages over prior art systems.

129. CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '370 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '370 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 15, herein incorporated by reference.

130.    Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '370 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '370 patent.

131.    Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '370 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These instrumentalities constitute a material part of the invention of the '370 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

132.    Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '370 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority. These instrumentalities constitute at least a component part of the invention of the '370 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

133.    Defendant has had actual knowledge of the '370 patent at least by December 27, 2018 by virtue of Plaintiffs' original Complaint and service of the same (D.I. 1, 4), providing notice of the patent and detailing CallMiner's infringement.

134. Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement. CallMiner's ongoing infringement is willful and deliberate, as CallMiner became aware of the infringing nature of the Accused Instrumentalities at least by December 27, 2018, the date CallMiner received service of the original Complaint. Despite having actual knowledge of the '370 patent, CallMiner has continued its infringing activities. On information and belief, CallMiner has furthermore escalated its infringing behavior by, for example, partnering with Morae Global Corporation, which it described in an announcement on February 21, 2019 as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential noncompliant behavior." Ex. 25. This continued and escalating infringement is willful and deliberate.

135. Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '370 patent. This irreparable harm will continue unless this Court enjoins Defendant.

136. CallMiner's conduct in infringing the '370 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

**EIGHTH CAUSE OF ACTION**

**INFRINGEMENT OF U.S. PATENT NO. 6,252,946**

137. The allegations of Paragraphs 1-136 are incorporated by reference as if fully set forth herein.

138. The '946 patent is valid and enforceable.

139. The '946 patent addresses several technical problems in the field of telephony call monitoring and recording. As one nonlimiting example, certain call recording technologies would

compile call records from multiple, disparate data sources as independent records. *See, e.g.*, Ex. 2, 2:47-61, 31:54-65. This approach resulted in inefficient and redundant storage, as data from a single call would be stored multiple times and in separate call records. *See, e.g.*, *id.* Such call fragmentation also made call record searching and retrieval less efficient, as fragmented retrieval of partial records failed to reveal instances when disparate records pertained to the same communication. *See, e.g.*, *id.* The foregoing problems arose in part because certain "trunk-side" communication lines—such as the DEFINITY G3 PBX used in North America—would assign calls to channels dynamically, making it impossible to "predict[] in advance" whether a given call was related to another previously hosted over the network. *See, e.g.*, *id.*, 1:59-3:24. For example, certain prior art systems could not detect that call data from two legs of a transferred or conferenced call were logically related and thus should be stored together. *See, e.g.*, *id.*, 23:45-65. Other systems—such as those relying on Station Message Detail Recording (SMDR) links—could not provide call channel information during an active call. *See, e.g.*, *id.*, 1:59-3:24. These systems could therefore not support telephony services requiring "features and capabilities dependent on real-time data." *See, e.g.*, *id.* The shortcomings of conventional systems were particularly acute when calls were held, transferred, or conferenced. For example, certain prior art systems could not detect that call data from two legs of a transferred or conferenced call were logically related and thus should be stored together. *See, e.g.*, *id.*, 2:37-47, 8:47-65, 23:52-65 ("Associations between related events were made difficult in certain cases because the call identification numbers given by a PBX may change after a call has been transferred or conferenced, or the numbers may be recycled and reused over time."). In addition, prior systems could not support call centers needing to dynamically determine whether to record specific telephone calls, live display active calls, or monitor audio traffic. *See, e.g.*, *id.*, 2:33-46.

140. The '946 patent provides a technical and unconventional solution to this and other problems via an efficient call data merging and archival methodology. In one aspect, the '946 patent in part merges call records associated with the same call from various sources (e.g., real-time CTI links and SMDR links) to overcome shortcomings of the prior art:

> Generally, the functionality of the system involves tapping into activity on a PBX (Private Branch Exchange) by intercepting audio on either the trunk or station side of a telephone call. The tapped audio is then redirected as input to a channel on a Digital Signal Processor (DSP) based voice processing board, which in turn is digitized into program addressable buffers. The recorded digitized audio is then combined with descriptive information ("metadata") obtained through a Computer Telephony Integration (CTI) communications link with the PBX, and stored as a single manageable unit ("Voicedata") to facilitate its subsequent search and retrieval.
>
> . . . .
>
> [T]he CTI Server of the preferred embodiment accepts data from a PBX or similar equipment in a telephone switch environment, and can use both real-time CTI communications links and asynchronous information sources such [as] the Station Message Detail Recording (SMDR) interface. The CTI Server translates and combines the various types of input data into a unified, normalized format.

*Id.*, 4:43-56, 6:22-29; *see also, e.g.*, *id.*, 3:28-42, 4:60-5:25, 6:65-10:60. Combining call data from synchronous and asynchronous sources provides several technical advances over the prior art systems, such as reducing memory usage, greatly simplifying and reducing the work necessary to perform search, retrieval, and archival operations, and offering a more natural and flexible framework for controlling security access to the recording. *See, e.g.*, *id.*, 32:32-44, Figs. 1, 2, 10, 13, 15, 22A. The patent also provides an unconventional, technical solution to the foregoing issues by simultaneously merging telephony event data from various locations within single, unified call instance. *See, e.g.*, *id.*, 3:11-24, 4:44-59, 8:66-9:31, Figs. 1, 2, 10, 13, 15. At the time of the invention, it was not a trivial task to merge call data as described and claimed for a host of technical reasons. *See, e.g.*, *id.*, 9:36-10:16. For example, SMDR and CTI links do not share common

reference identification numbers and measure call durations using different units. *See, e.g.*, *id.* The combination of elements described and claimed in the '946 patent was thus unknown in the prior art and provided significant advantages over prior art systems.

141. CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '946 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '946 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 14, herein incorporated by reference.

142. Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '946 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '946 patent.

143. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '946 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These instrumentalities constitute a material part of the invention of the '946 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

144. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '946 patent under 35 U.S.C. § 271, either literally and/or

under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority. These instrumentalities constitute at least a component part of the invention of the '946 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

145.    Defendant has had actual knowledge of the '946 patent at least by December 27, 2018 by virtue of Plaintiffs' original Complaint and Plaintiffs' service of the same (D.I. 1, 4), providing notice of the patent and detailing CallMiner's infringement.

146.    Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement. CallMiner's ongoing infringement is willful and deliberate, as CallMiner became aware of the infringing nature of the Accused Instrumentalities at least by December 27, 2018, the date CallMiner received service of the original Complaint. Despite having actual knowledge of the '946 patent, CallMiner has continued its infringing activities. On information and belief, CallMiner has furthermore escalated its infringing behavior by, for example, partnering with Morae Global Corporation, which it described in an announcement on February 21, 2019 as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential noncompliant behavior." Ex. 25. This continued and escalating infringement is willful and deliberate.

147.     Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '946 patent. This irreparable harm will continue unless this Court enjoins Defendant.

148.     CallMiner's conduct in infringing the '946 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## NINTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 10,021,248

149.     The allegations of Paragraphs 1-148 are incorporated by reference as if fully set forth herein.

150.     The '248 patent is valid and enforceable.

151.     The '248 patent addressed several technical problems in the field of call center monitoring systems. As one nonlimiting example, prior methods for evaluating the quality of customer service agents at call centers were inconsistent and subjective. *See, e.g.*, Ex. 11, 1:47-54. These prior systems could not determine a customer's satisfaction level or other indictors of an agent's quality in an objective, automated, and reliable manner. Instead, call centers often gathered data from inefficient, time-consuming, and unrepresentative post-call surveys from willing participants. *See, e.g.*, *id.*, 1:63-2:7. Prior systems also failed to provide "insight into the reasons for an experiential outcome," thereby offering managers little information as to how or why their agents achieved certain scores. *See, e.g.*, *id.*, 2:26-36. For example, prior art systems could not dynamically compute agent quality as a function of behavioral metrics such as empathy and politeness events across calls or across time.

152.     The '248 patent provides a technical and unconventional solution to these and other problems in part by automatically subjecting call data to a behavioral model for deducing and categorizing human behaviors. *See, e.g.*, *id.*, 2:32-36, 3:13-17. These linguistic models account

for, among other thing, spoken words, inflections, and distress, as well as other phenomena such as nonlinguistic patterns. *See, e.g.*, *id.*, 21:53-22:3. In some embodiments, the systems then determine customer satisfaction levels as a function of these phenomena. *See, e.g.*, *id.*, 2:32-36, 3:13-17. In doing so, the '248 patent provides an automated method for objectively classifying call events, determining customer satisfaction levels, and improving the accuracy of speech analytics systems. *See, e.g.*, *id.*, 1:63-3:23. The combination of elements described and claimed in the '248 patent was unknown in the prior art and provided significant advantages over prior art systems.

153. CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '248 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '248 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 23, herein incorporated by reference.

154. Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '248 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '248 patent.

155. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '248 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These

instrumentalities constitute a material part of the invention of the '248 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

156.     Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '248 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority.  These instrumentalities constitute at least a component part of the invention of the '248 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.  Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

157.     Defendant has had actual knowledge of the '248 patent at least by December 27, 2018 by virtue of Plaintiffs' original Complaint and service of the same (D.I. 1, 4), providing notice of the patent and detailing CallMiner's infringement.

158.     Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement.  CallMiner's ongoing infringement is willful and deliberate, as CallMiner became aware of the infringing nature of the Accused Instrumentalities at least by December 27, 2018, the date CallMiner received service of the original Complaint. Despite having actual knowledge of the '248 patent, CallMiner has continued its infringing activities.  On information and belief, CallMiner has furthermore escalated its infringing behavior by, for example, partnering with Morae Global Corporation, which it described in an

announcement on February 21, 2019 as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential noncompliant behavior." Ex. 25. This continued and escalating infringement is willful and deliberate.

159. Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '248 patent. This irreparable harm will continue unless this Court enjoins Defendant.

160. CallMiner's conduct in infringing the '248 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## TENTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 8,611,523

161. The allegations of Paragraphs 1-160 are incorporated by reference as if fully set forth herein.

162. The '523 patent is valid and enforceable.

163. The '523 patent addresses several technical problems in the field of call center data monitoring and recording. As one nonlimiting example, many companies prior to the '523 patent often relied upon third-party call centers to monitor and assess the quality of their agents. *See, e.g.*, Ex. 9, 1:41-2:3. This arrangement proved to be inconsistent and subjective. For example, a company's third-party call center may be located thousands of miles away from the customer or the company they supported, resulting in call monitoring processes untuned to the nature or subject matter of the monitored calls. *See, e.g.*, *id.* While speech analytics software existed at the time, these engines often suffered from inefficient classification schemes and call segmentation. *See,*

*e.g.*, *id.*, 2:4-17. Thus, existing speech analytics products could not provide accurate measures of agent quality or call classification to overcome the shortcomings of existing systems.

164. The '523 patent provides a technical and unconventional solution to these and other problems in part by providing a system that processes a telephonic communication by breaking down an interaction into objects and categories. *See, e.g.*, *id.*, 15:48-16:5. The '523 patent accomplishes this technical solution by, in one embodiment, partitioning the communication into at least two constituted data sets, translates the data sets into text, and classifies the data sets for analysis. *See, e.g.*, *id.*, 2:38-63, Figs. 10-14. The classification types may identify the data as "setup, information exchange, miscommunication, non-interaction, conversation, or positive comment, or any combination thereof." *Id.* This combination of elements described and claimed in the '523 patent was unknown in the prior art and provided significant advantages over prior art systems.

165. CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '523 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '523 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 21, herein incorporated by reference.

166. Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '523 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '523 patent.

167. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '523 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These instrumentalities constitute a material part of the invention of the '523 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

168. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '523 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority. These instrumentalities constitute at least a component part of the invention of the '523 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

169. Defendant has had actual knowledge of the '523 patent at least by December 27, 2018 by virtue of Plaintiffs' original Complaint and service of the same (D.I. 1, 4), providing notice of the patent and detailing CallMiner's infringement.

170. Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement. CallMiner's ongoing infringement is willful and deliberate, as CallMiner became aware of the infringing nature of the Accused Instrumentalities at

least by December 27, 2018, the date CallMiner received service of the original Complaint. Despite having actual knowledge of the '523 patent, CallMiner has continued its infringing activities. On information and belief, CallMiner has furthermore escalated its infringing behavior by, for example, partnering with Morae Global Corporation, which it described in an announcement on February 21, 2019 as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential noncompliant behavior." Ex. 25. This continued and escalating infringement is willful and deliberate.

171. Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '523 patent. This irreparable harm will continue unless this Court enjoins Defendant.

172. CallMiner's conduct in infringing the '523 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## ELEVENTH CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 8,023,639

173. The allegations of Paragraphs 1-172 are incorporated by reference as if fully set forth herein.

174. The '639 patent is valid and enforceable.

175. The '639 patent addresses several technical problems in the field of speech analytics and data visualization. As one nonlimiting example, call centers often needed to route calls based on their complexity but could not do so in an automated or efficient matter. Typically, call centers would opt to process simple calls through self-service interactive voice response ("IVR") systems, while more complex calls might require the intervention of a live customer

service representative. *See, e.g.*, Ex. 7, 1:41-63. At the time of the '639 patent, however, no system existed for assessing the *a priori* complexity for routing or monitoring purposes. Nor could prior art systems dynamically measure changes to a call's complexity over time. *Id.* Instead, call centers had to hire on additional personnel to determine the complexity of customer calls, or otherwise subject their customers to lengthy, inefficient processes that harmed the customer experience. *See, e.g.*, *id.*, 1:23-63. No system existed to determine the complexity of a communication between a customer and an organization for properly routing the call or taking other actions in real-time. *See, e.g.*, *id.*

176.    The '639 patent provides an unconventional, technical solution to these problems in part by providing a system for generating call attributes associated with a customer interaction and comparing those attributes to a rule to determine the complexity of the interaction in real-time. *See, e.g.*, *id.*, 2:7-41. These attributes may include, for example, call duration or detected distress events, signifying that more lengthy or stressful calls may warrant intervention or specific routing procedures. *See, e.g.*, *id.*, 2:9-21, 15:35-53. In one embodiment, the determined complexity governs whether the interaction is eligible for self-service instead of live support via a customer service representative. *See, e.g.*, *id.*, 2:39-41. The '639 patent also describes generating unconventional graphical user interfaces to visualize a call's complexity. For example, the patent describes interfaces for dynamically displaying a call's complexity and the call attributes in a time-based representation of the call in real-time. *See, e.g.*, *id.*, 3:24-38. These combinations of elements described and claimed in the '639 patent were unknown in the prior art and provided significant advantages over existing systems.

177.    CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '639 patent by making, using, offering to sell, selling, and/or importing the

Accused Instrumentalities practicing the features claimed in the '639 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 19, herein incorporated by reference.

178. Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '639 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '639 patent.

179. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '639 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These instrumentalities constitute a material part of the invention of the '639 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

180. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '639 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority. These instrumentalities constitute at least a component part of the invention of the '639 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these

instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

181. Defendant has had actual knowledge of the '639 patent at least by December 27, 2018 by virtue of Plaintiffs' original Complaint and service of the same (D.I. 1, 4), providing notice of the patent and detailing CallMiner's infringement.

182. Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement. CallMiner's ongoing infringement is willful and deliberate, as CallMiner became aware of the infringing nature of the Accused Instrumentalities at least by December 27, 2018, the date CallMiner received service of the original Complaint. Despite having actual knowledge of the '639 patent, CallMiner has continued its infringing activities. On information and belief, CallMiner has furthermore escalated its infringing behavior by, for example, partnering with Morae Global Corporation, which it described in an announcement on February 21, 2019 as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential noncompliant behavior." Ex. 25. This continued and escalating infringement is willful and deliberate.

183. Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '639 patent. This irreparable harm will continue unless this Court enjoins Defendant.

184. CallMiner's conduct in infringing the '639 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## TWELFTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 7,714,878

185.     The allegations of Paragraphs 1-184 are incorporated by reference as if fully set forth herein.

186.     The '878 patent is valid and enforceable.

187.     The '878 patent addressed several technical problems in the field of data security. As one nonlimiting example, call centers often monitored calls when sensitive information—such as credit card information—passed from a customer to an agent. *See, e.g.*, Ex. 6, 1:29-36. Prior art systems were significantly limited in how they could limit access to this sensitive information, particularly when supervisors or other personnel had access rights an agent's calls. *See, e.g.*, *id.*, 1:36-2:12. For example, prior methods could not restrict user access to specific types of content or assign sensitivity levels to segments of an interaction so that sensitive information remained hidden. *See, e.g.*, *id.*, 2:13-43. No solution existed for marking and masking certain segments of a call so as to prevent the recording or monitoring of sensitive data in a real-time environment. *See, e.g., id.*, 2:44-55.

188.     The '878 patent provides an unconventional, technical solution to these problems in part by marking locations within a recorded interaction stream containing content events, metadata defining content structure, and/or content user data *See, e.g.*, *id.*, 2:59-3:3, 12:8-18. These events may include, for example, financial, medical, or personal information, such as credit card data.   The '878 patent then describes masking the marked segments of the interaction data and presenting the monitored information as masked to a user of the system, such as a supervisor or agent. *See, e.g.*, *id.*, 3:12-18, 5:15-42. These unconventional advancements, among other things, enabled organizations to mask portions of interactions to protect user privacy, while also enabling supervisors and auditors to review interactions in real-time. The disclosed systems

provided new ways of enabling selective and dynamic access to different types and segments of monitored interactions between callers and call center agents. *See, e.g.*, *id.*, 2:44-55. The combination described and claimed in the '878 patent was unknown in the prior art and provided significant advantages over existing systems.

189.     CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '878 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '878 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 18, herein incorporated by reference.

190.     Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '878 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '878 patent.

191.     Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '878 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These instrumentalities constitute a material part of the invention of the '878 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

192.    Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '878 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority.  These instrumentalities constitute at least a component part of the invention of the '878 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.  Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

193.    Defendant has had actual knowledge of the '878 patent at least by December 27, 2018 by virtue of Plaintiffs' original Complaint and service of the same (D.I. 1, 4), providing notice of the patent and detailing CallMiner's infringement.

194.    Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement.  CallMiner's ongoing infringement is willful and deliberate, as CallMiner became aware of the infringing nature of the Accused Instrumentalities at least by December 27, 2018, the date CallMiner received service of the original Complaint. Despite having actual knowledge of the '878 patent, CallMiner has continued its infringing activities.  On information and belief, CallMiner has furthermore escalated its infringing behavior by, for example, partnering with Morae Global Corporation, which it described in an announcement on February 21, 2019 as "deliver[ing] a new regulatory risk mitigation and compliance solution that steps beyond traditional compliance approaches by leveraging sophisticated speech analytics technology to analyze audio interactions and uncover potential

noncompliant behavior." Ex. 25. This continued and escalating infringement is willful and deliberate.

195. Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '878 patent. This irreparable harm will continue unless this Court enjoins Defendant.

196. CallMiner's conduct in infringing the '878 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## THIRTEENTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 9,942,400

197. The allegations of Paragraphs 1-196 are incorporated by reference as if fully set forth herein.

198. The '400 patent is valid and enforceable.

199. The '400 patent addressed several technical problems in the field of call center operations. As one nonlimiting example, many companies prior to the '400 patent often relied upon third-party call centers to monitor and assess the quality of their agents. *See, e.g.*, Ex. 26, 1:44-51. This arrangement proved to be inconsistent and subjective. For example, a company's third-party call center may be located thousands of miles away from the customer or the company they supported, resulting in call monitoring processes untuned to the nature or subject matter of the monitored calls. *See, e.g.*, *id.* Existing speech analytics software did not mine data from emerging sources such as social media feeds, web data, or chat feed data. *See, e.g.*, *id.*, 2:4-12, 4:16-24, 12:12-25. Thus, existing speech analytics products failed to derive knowledge obtainable by monitoring and analyzing nascent communication feeds. *Id.*

200. The '400 patent provides an unconventional, technical solution to these and other problems in part by providing a system for generating behavioral assessment data from electronic

customer communications. *See, e.g.*, 8:8-21, 12:12-25. These electronic communications can take the form of a social media feed, update status, profile, chat feed data, or other such data. *See, e.g., id.* The '400 patent mines this electronic information to deduce a behavioral model for a given customer. This behavioral data may include, for example, levels of stress, escalation language, or a personality type of the customer. *See, e.g.*, 15:6-40. The system may then provide notifications to a call agent based on the derived behavioral data. *See, e.g., id.*, 14:25-43. These notifications use data derived from electronic communications to drive improved customer service and quantitatively assess agent quality where prior systems could not. *Id.* This combination of elements described and claimed in the '400 patent was unknown in the prior art and provided significant advantages over prior art systems.

201. CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '400 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '400 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 28, herein incorporated by reference.

202. Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '400 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '400 patent.

203. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '400 patent under 35 U.S.C. § 271, either literally and/or

under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These instrumentalities constitute a material part of the invention of the '400 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

204. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '400 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority. These instrumentalities constitute at least a component part of the invention of the '400 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

205. Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement.

206. Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '400 patent. This irreparable harm will continue unless this Court enjoins Defendant.

207. CallMiner's conduct in infringing the '400 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## FOURTEENTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 8,204,884

208.   The allegations of Paragraphs 1-207 are incorporated by reference as if fully set forth herein.

209.   The '884 patent is valid and enforceable.

210.   The '884 patent addresses several technical problems in the field of call center management systems and speech analytics.  At the time of the '884 patent, known analytics solutions could not analyze data latent in the spoken interaction between callers and agents.  *See, e.g.*, Ex. 27, 2:53-59.  Instead, these systems focused on transactional data related to the interaction, not the interaction itself.  *See, e.g.*, *id.*  Existing analytics products were thus unable to discern cognizable content generated during a call, such as a customer's reasons for calling or events taking place during the call.  *See, e.g.*, *id.*, 3:9-12.  Attempting to solve this issue proved costly, inefficient, and wasteful.  *See, e.g.*, *id.*, 3:15-22.  These costs only increased as the volume of interactions grew.  *See, e.g.*, *id.*, 1:60-65.

211.   The '884 patent provides an unconventional, nonroutine technical solution to these problems and other problems in part by "capturing and analyzing content derived from customer interactions, which overcomes the disadvantages of the prior art."  *See, e.g.*, *id.*, 3:51-54.  The disclosed systems store and analyze these interactions to extract their content, such as by selectively processing segments of interest or analyzing the segments for silence, talk-over, or emotional states.  *See, e.g.*, *id.*, 3:61-63, 9:49-61, 19:43-47, 21:4-7, 21:28-33, Fig. 4.  The patent improves on prior methodologies by using rule-based technology to automatically classify content from the interactions based on user-defined or automatically newly-created categories, such as those classifying emotional states or semantic analysis.  *See, e.g.*, *id.*, 12:4-20, 21:65-22:51, 26:51-62, 29:32-40.  The '884 patent also improved on prior systems by providing real-time content

analysis to deliver coaching materials to call center agents based on patterns recognized during a call. *See, e.g.*, *id.*, 27:8-20. The combination of elements described and claimed in the '884 patent was unknown in the art and enabled significant advances over those prior art systems.

212. CallMiner, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claim 1 of the '884 patent by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities practicing the features claimed in the '884 patent without authority, either literally and/or under the doctrine of equivalents, either individually and/or jointly with its customers using the Accused Instrumentalities. CallMiner's infringing instrumentalities include, but are not limited to, CallMiner's Eureka software and related software modules. A claim chart setting forth certain nonlimiting examples of CallMiner's infringement accompanies this Complaint as Exhibit 29, herein incorporated by reference.

213. Defendant has indirectly infringed and continues to indirectly infringe at least claim 1 of the '884 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by actively inducing its customers to use Eureka to directly infringe the '884 patent.

214. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '884 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, by selling, offering to sell, and/or importing within or into the United States the Accused Instrumentalities, including the Eureka software. These instrumentalities constitute a material part of the invention of the '884 patent, are known by Defendant to be especially made or adapted for use in infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

215. Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least claim 1 of the '884 patent under 35 U.S.C. § 271, either literally and/or

under the doctrine of equivalents, by supplying or causing to be supplied in or from the United States the Accused Instrumentalities, including the Eureka software, without authority. These instrumentalities constitute at least a component part of the invention of the '884 patent, are especially made or adapted for use infringing the patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows that these instrumentalities are so made or adapted and actively induces and intends these instrumentalities to be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

216. Plaintiffs are entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for CallMiner's infringement.

217. Plaintiffs have been and continue to be damaged and irreparably harmed by CallMiner's infringement of the '884 patent. This irreparable harm will continue unless this Court enjoins Defendant.

218. CallMiner's conduct in infringing the '884 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

(a) A judgment against CallMiner as to infringement of one or more claims of each of the Asserted Patents;

(b) A permanent injunction under 35 U.S.C. § 283, enjoining CallMiner and its officers, directors, agents, servants, affiliates, employees, subsidiaries, parents, licensees, assigns, and customers, and all others acting in concert or participation with them, from further acts of infringing, inducing infringement, and/or contributing to the infringement of the Asserted Patents;

(c)     A judgment against CallMiner for money damages sustained as a result of Defendant's infringement of the Asserted Patents in an amount to be determined at trial as provided under 35 U.S.C. § 284, including enhanced damages due to, for example, Defendant's willful infringement of the Asserted Patents;

(d)     An accounting for infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

(e)     An award of pre-judgment and post-judgment interest on the damages caused by CallMiner's infringing activities and other conduct complained of herein;

(f)     A finding that this case is an exceptional case under 35 U.S.C. § 285;

(g)     An award of reasonable attorneys' fees and costs incurred in connection with this action;

(h)     A compulsory future royalty; and

(i)     Any and all other relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully request trial by jury under Rule 38 of the Federal Rules of Civil Procedure of all issues in this action so triable.

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, DE 19801
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiffs*

*Of Counsel:*

Gerson S. Panitch
FINNEGAN HENDERSON FARABOW
    GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, DC 20001
(202) 408-4000
gerson.panitch@finnegan.com

Jeffrey A. Berkowitz
Joseph M. Schaffner
Alexander M. Boyer
FINNEGAN HENDERSON FARABOW
    GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Dr.
Reston, VA 20190
(571) 203-2700
jeffrey.berkowitz@finnegan.com
joseph.schaffner@finnegan.com
alexander.boyer@finnegan.com

Dated: March 11, 2019