IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NICE LTD., NICE SYSTEMS INC., AND
MATTERSIGHT CORP.,

                Plaintiffs,

      v.

CALLMINER, INC.,

                Defendant.

Civil Action No. 18-cv-2024-RGA

MEMORANDUM ORDER

The United States Magistrate Judge made a Report and Recommendation. (D.I. 30).

Both parties filed objections. (D.I. 32, 33). Both parties responded. (D.I. 34, 35).

Magistrate Judges have authority to make decisions pursuant to 28 U.S.C. § 636(b)(1)(B).

Both sides agree that my review of any objections to this report is *de novo*. (D.I. 32 at 1; D.I. 33

at 2); *see* Fed. R. Civ. P. 72(b)(3).

The Magistrate Judge's Report and Recommendation only applies to claim 1 of each of

the '872, '752, '706, '370, '946, '248, '523, '639, and '400 patents ("the challenged patents").[1]

(D.I. 30 at 9). The Magistrate Judge recommends that Defendant's partial motion to dismiss

pursuant to Rule 12(b)(6) (D.I. 18) be denied. (D.I. 30 at 46). First, the Magistrate Judge

recommends that claim 1 of each of the challenged patents is directed to an abstract idea. (*Id.* at

10, 17, 22, 27, 33, 38, 42). Plaintiffs object to this recommendation. (D.I. 32 at 1). Plaintiffs'

---

[1] Defendant's partial motion to dismiss alleges that nine of the fourteen patents-in-suit are directed toward patent ineligible subject matter under 35 U.S.C. § 101. (D.I. 18). The patents relevant to Defendant's motion are: U.S. Patent Nos. 6,246,752 ("the '752 patent"), 6,252,946 ("the '946 patent"), 6,785,370 ("the '370 Patent"), and 6,937,706 ("the '706 patent") (collectively, the "Data Collection Patents"); U.S. Patent Nos. 8,611,523 ("the '523 patent") and 8,023,639 ("the '639 patent") (collectively, the "Call Classification Patents"); U.S. Patent Nos. 8,553,872 ("the '872 patent"), 9,942,400 ("the '400 patent"), and 10,021,248 ("the '248 patent") (collectively, the "Call Evaluation Patents"). (D.I. 30 at 1).

objection is wholly baseless as the Magistrate Judge was clearly right in determining each of the challenged claims to be directed to an abstract idea. Second, the Magistrate Judge recommends denying Defendant's motion because questions of fact exist in determining whether the challenged patents contain inventive concepts sufficient to transform the abstract ideas into patent-eligible inventions. (D.I. 30 at 14, 21, 25, 31-32, 37, 41, 46). Defendant objects to this recommendation. (D.I. 33 at 1). Defendant's objection is not wholly baseless, but I nevertheless agree with the Magistrate Judge that the question of whether any of the disputed claims have an inventive concept cannot in this case be determined on a motion to dismiss.

## I.  DATA COLLECTION PATENTS

### A.  The '706 and '752 patents

Claim 1 of the '752 patent is nearly identical to that of the '706 patent. (*See* D.I. 30 at 10). The Magistrate Judge therefore considered them together. (*Id.*). I do so too.

#### 1.  *Alice* step one

The Magistrate Judge recommends, "Claim 1 [of each of the '706 and '752 patents] describes the abstract idea of recording data related to telephone calls from multiple sources and combining the data into a single recording." (*Id.*). Plaintiffs object to this recommendation and argue that each claim 1 is not directed to an abstract idea because it "recites improvements to telephony monitoring and recording." (D.I. 32 at 2).

Plaintiffs attempt to distinguish each claim 1 from the claim in *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014). (*Id.*). Plaintiffs assert that, unlike the claims in *Digitech*, each claim 1 "addresses prior deficiencies related to storing, archiving, searching, and playing back call recordings related to a single call across different recorders." (*Id.*). Plaintiffs, however, do not explain how each claim addresses these

deficiencies. Plaintiffs also argue that each claim 1 recites a "novel data structure," which is the "single call record." (*Id.* at 3). While each claim 1 does recite that data from the first source and data from the second source are "electronically combin[ed]" in the "single call record," the claim does not describe how this data is combined or structured in the "single call record." ('706 patent, col. 60:36-39). The focus of each claim 1 therefore is not on the "single call record," but instead on the abstract idea of electronically receiving and combining data from two separate sources. Each claim 1 thus does not recite a specific technological improvement sufficient to find the claim nonabstract.

Claim 1 of each of the '706 and '752 patents is directed to the abstract idea of recording data related to telephone calls from multiple sources and combining the data into a single recording. This focus is reflected in the claim, each of which recites: "A method of recording telephone call information comprising: (a) electronically receiving data from a first source . . .; (b) electronically receiving data from a second source . . .; and (c) electronically combining event data from said first source and event data from said second source into a single call record." ('706 patent, col. 60:27-39). The specification supports this expression of the abstract idea as it states, "The present invention is directed to a system and method that is capable of simultaneously monitoring two or more data links, gathering information about calls from those data links, and combining that information into a single data model of the telephony activity within the call center." ('706 patent, col. 3:9-13). "Where, as here, the abstract idea tracks the claim language and accurately captures what the patent asserts to be the focus of the claimed advance over the prior art, characterizing the claim as being directed to an abstract idea is appropriate." *Solutran, Inc. v. Elavon*, Inc., 931 F.3d 1161, 1168 (Fed. Cir. 2019) (cleaned up).

In determining whether a claim constitutes an abstract idea, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).  Here, each claim 1 is like the claim at issue in *Digitech*.  The claim at issue in *Digitech* recited "a process of taking two data sets and combining them into a single data set."  758 F.3d at 1351.  Similarly, each claim 1 recites a process for taking data from two sources and combining them into a single call record.  ('706 patent, col. 60:28-39).  In *Digitech*, the Federal Circuit determined that the claim at issue was abstract because, "Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."  758 F.3d at 1351.  The Federal Circuit has also held that "claims reciting the collection, transfer, and publishing of data are directed to an abstract idea."  *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610-12 (Fed. Cir. 2016)).  Claim 1 of each of the '706 and '752 patents is thus directed to an abstract idea.  I therefore overrule Plaintiffs' objection.

### 2. *Alice* step two

The Magistrate Judge recommends that I deny Defendant's motion to dismiss claim 1 of each of the '706 and '752 patents because there is a factual dispute regarding whether the invention "describes well-understood, routine, and conventional activities."  (D.I. 30 at 14).  The Magistrate Judge determined that Plaintiffs' amended complaint contains "plausible and specific factual allegations that aspects of the claims are inventive" that "are sufficient" to state a claim on a motion to dismiss.  (*Id.*).  The Magistrate Judge concluded that the specification "provide[s]

technical details regarding a method and system of merging call data originating from otherwise incompatible data sources" and that "these alleged improvements are captured in claim 1." (*Id.*). Defendant objects to this recommendation, arguing that the asserted claims "do not recite a solution" to the problem outlined in the specification, "such as how the data might be monitored, gathered, or combined." (D.I. 33 at 3).

Defendant places too high a burden on what the claims must include to sufficiently capture improvements detailed in the specification. To determine whether the "improvements in the specification . . . create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities, . . . [the court must] analyze the asserted claims and determine whether they capture these improvements." *Berkheimer*, 881 F.3d at 1369. This standard does not require the claims to completely describe the purported improvements or solutions, as Defendant contends, but rather "capture" them. The specification of the '706 and '752 patents detail a method and system of merging call data in a single source from otherwise incompatible data sources. ('706 patent, col. 5:3-19, 9:30-10:10, 29:12-23). Claim 1 captures these purported improvements in its recitation of "electronically combining event data from said first source and event data from said second source into a single call record when event data from said first and second sources is related to the same telephone call." ('706 patent, col. 60:36-39). Claim 1 "recites a specific method of" recording telephone call information that, "according to the specification, provides benefits that improve" merging that data. *Berkheimer*, 881 F.3d at 1370. Thus, there is a factual dispute about whether the invention "describes well-understood, routine, and conventional activities." *Id.* at 1369.

Defendant argues that the conclusion that claim 1 does not recite any "specific improvement to technology" at *Alice* step one precludes a determination of an inventive concept

at *Alice* step two.  (*See* D.I. 33 at 4).  This cannot be the case because the purpose of *Alice* step two is that it only comes after a determination that a claim is directed to an abstract idea.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 218-19 (2014).  Concluding that a claim does not recite any specific improvement to technology is a way of determining that a claim is directed to an abstract idea.  *See Enfish*, 822 F.3d at 1336 (holding that the claims at issue were not abstract because "they are directed to a specific improvement to the way computers operate").  Thus, *Alice* step two would be moot if a determination that a claim does not recite any specific improvement to technology at step one would preclude a determination of an inventive concept at step two.  Further, the Federal Circuit has resolved the *Alice* inquiry in a similar way to that of the Magistrate Judge's Report and Recommendation.  In *Cellspin*, the Federal Circuit determined that the claims at issue did not recite technological improvements at *Alice* step one, but "[could not] conclude that the asserted claims lack an inventive concept" at step two.  927 F.3d at 1317-18.  Thus, I rule Defendant's objection.

### B.     The '370 and '946 patents

Claim 1 of the '946 patent is nearly identical to claim 1 of the '370 patent.  (*See* D.I. 30 at 16).  The Magistrate Judge therefore considered them together.  (*Id.*).  I do so too.

#### 1.   *Alice* step one

The Magistrate Judge recommends that each claim 1 "is drawn to the abstract idea of creating a call record, collecting additional data regarding the call, and updating the call record with the collected data."  (*Id.* at 17).  Plaintiffs object to this recommendation and argue that each claim 1 is not directed to an abstract idea because it recites "technical improvements in telephony recording and playback by constructing a master call record, which is created by matching segments of audio data recorded on various recorders using 'telephony events.'"  (D.I. 32 at 3).

Plaintiffs argue that each claim 1 recites a specific improvement to technology because the claim "expressly recite[s] the steps for creating the master call record using telephony events." (*Id.* at 4). Plaintiffs, however, do not show that these steps amount to more than those of well-understood data-gathering activities. These steps of each claim 1 "do[] not add any meaningful limitations to the abstract idea." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015).

Each claim 1 is directed to the abstract idea of creating a call record, collecting additional data regarding the call, and updating the call record with the collected data. ('370 patent, col. 67:53-68:2). This focus is reflected in the claim, each of which recites: "A method . . . comprising: (a) constructing a call record . . .; (b) receiving data regarding telephony events . . .; (c) matching a received telephony event with a constructed call record; (d) updating the matching call record based on the received telephony event data; and (e) combining the updated call record with data . . . to obtain a master call record representing the lifetime of the telephone call." (*Id.*). The specification supports this expression of the abstract idea. (*See* '370 patent, col. 3:17-25). "Where, as here, the abstract idea tracks the claim language and accurately captures what the patent asserts to be the focus of the claimed advance over the prior art, characterizing the claim as being directed to an abstract idea is appropriate." *Solutran*, 931 F.3d at 1168 (cleaned up).

In determining whether a claim constitutes an abstract idea, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. Here, each claim 1 is like the claim at issue in *Digitech*, which recited "a process of taking two data sets and combining them into a single data set." 758 F.3d at 1351. Similarly, each claim 1 recites a method of taking two data sets and combining them into a single data set. ('370 patent, col. 67:53-68:2). In *Digitech*, the Federal

Circuit determined that the claim at issue was abstract because, "Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." 758 F.3d at 1351. The Federal Circuit has also held that "claims reciting the collection, transfer, and publishing of data are directed to an abstract idea." *Cellspin*, 927 F.3d at 1315 (citing *Elec. Power*, 830 F.3d at 1353; *In re TLI Commc'ns*, 823 F.3d at 610-12). Each claim 1 is thus directed to an abstract idea. I overrule Plaintiffs' objection.

### 2. *Alice* step two

The Magistrate Judge recommends that I deny Defendant's motion to dismiss each claim 1 because there is a factual dispute regarding whether the invention "describes well-understood, routine, and conventional activities." (D.I. 30 at 21). The Magistrate Judge determined that Plaintiffs' amended complaint contains "plausible and specific factual allegations that aspects of the claims are inventive" that "are sufficient" to state a claim on a motion to dismiss. (*Id.* at 20). The Magistrate Judge concluded that the specification "provide[s] technical details regarding a method and system of merging call data originating from otherwise incompatible data sources" and that "these alleged improvements are captured in claim 1." (D.I. 30 at 20-21). Defendant objects to this recommendation, arguing that the asserted claims "do not recite a solution" to the problem outlined in the specification, "such as how the data might be monitored, gathered, or combined." (D.I. 33 at 3).

Defendant places too high a burden on what the claims must include to sufficiently capture improvements detailed in the specification. To determine whether the "improvements in the specification . . . create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities, . . . [the court must] analyze the asserted claims

and determine whether they capture these improvements." *Berkheimer*, 881 F.3d at 1369. This standard does not require the claims to completely describe the purported improvements or solutions, as Defendant contends, but rather "capture" them. The specification provides technical details regarding a method and system of merging call data originating from otherwise incompatible data sources. ('370 patent, col. 4:25-41, 8:58-9:38, 31:7-18). Claim 1 captures these purported improvements in its recitation of "combining the updated call record with data indicating the location of recorded audio data for the segment of the call, to obtain a master call record representing the lifetime of the telephone call." ('370 patent, col. 67:66-68:2). Claim 1 "recites a specific method of" recording telephone call information that, "according to the specification, provides benefits that improve" merging that data. *Berkheimer*, 881 F.3d at 1370. Thus, there is a factual dispute about whether the invention "describes well-understood, routine, and conventional activities." *Id.* at 1369.

Defendant argues that the conclusion that the claim does not recite any "specific improvement to technology" at *Alice* step one precludes a determination of an inventive concept at *Alice* step two. (*See* D.I. 33 at 4). This cannot be the case because the purpose of *Alice* step two is that it only comes after a determination that a claim is directed to an abstract idea. *Alice*, 573 U.S. at 218-19. Concluding that a claim does not recite any specific improvement to technology is a way of determining that a claim is directed to an abstract idea. *See Enfish*, 822 F.3d at 1336 (holding that the claims at issue were not abstract because "they are directed to a specific improvement to the way computers operate"). Thus, *Alice* step two would be moot if a determination that a claim does not recite any specific improvement to technology at step one would preclude a determination of an inventive concept at step two. Further, the Federal Circuit has resolved the *Alice* inquiry in a similar way to that of the Magistrate Judge's Report and

Recommendation. In *Cellspin*, the Federal Circuit determined that the claims at issue did not recite technological improvements at *Alice* step one, but "[could not] conclude that the asserted claims lack an inventive concept" at step two. 927 F.3d at 1317-18. Thus, I overrule Defendant's objection.

## II.    CALL CLASSIFICATION PATENTS

### A.    The '523 patent

#### 1.    *Alice* step one

The Magistrate Judge recommends, "Claim 1 of the '523 patent is drawn to the abstract idea of collecting and classifying data from a customer-salesperson interaction." (D.I. 30 at 22). Plaintiffs object to this recommendation and argue that claim 1 is not directed to an abstract idea because it recites "improvements in the field of call center data monitoring." (D.I. 32 at 4).

Plaintiffs argue that claim 1 recites a specific improvement to technology because the claim addresses existing deficiencies "by processing telephonic communications into 'computer telephony interpretation events,' which are analyzed and classified into different types." (*Id.*). Plaintiffs, however, do not show that claim 1 includes limitations describing the separation of call recordings into constituent voice data or the conversion of the voice data into text data. Claim 1 instead articulates the functional steps of analyzing, recording, processing, and classifying telephonic communications using standard computer components. Claim 1's use of generic computer components to carry out a claimed abstract idea is not sufficient to render a claim patent eligible. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017).

Claim 1 of the '523 patent is directed to the abstract idea of collecting and classifying data from a customer-salesperson interaction. ('523 patent, col. 19:48-59). This focus is

reflected in the claim itself, which recites: "A system for analyzing a telephonic communication between . . . customers and . . . a contact center . . . the system comprising: a first server for recording a telephonic communication . . .; a module for processing said telephonic communication . . .; and a module for analyzing . . . and classifying" the telephony events. (*Id.*). The specification supports this expression of the abstract idea. (*See* '523 patent, col. 1:18-24). "Where, as here, the abstract idea tracks the claim language and accurately captures what the patent asserts to be the focus of the claimed advance over the prior art, characterizing the claim as being directed to an abstract idea is appropriate." *Solutran*, 931 F.3d at 1168 (cleaned up).

In determining whether a claim constitutes an abstract idea, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. Claim 1 of the '523 patent is like the claim at issue in *Two-Way Media*, which claimed the functional results of "converting," "routing," "controlling," "monitoring," and "accumulating records." 874 F.3d at 1337. Similarly, claim 1 of the '523 patent recites the steps of analyzing, recording, processing, and classifying using result-based functional language. The system described in claim 1 of the '523 patent is consistent with claims that the Federal Circuit found to be abstract. Claim 1 of the '523 patent is thus directed to an abstract idea. I therefore overrule Plaintiffs' objection.

### 2. *Alice* step two

The Magistrate Judge recommends that I deny Defendant's motion to dismiss claim 1 of the '523 patent because there is a factual dispute regarding whether the invention "describes well-understood, routine, and conventional activities." (D.I. 30 at 25). The Magistrate Judge determined that Plaintiffs' amended complaint contains "plausible and specific factual allegations that aspects of the claims are inventive" that "are sufficient" to state a claim on a

motion to dismiss. (*Id.* at 24-25). The Magistrate Judge concluded that the specification "describes a system for objectively analyzing audio segments based on objects formed from voice data and classified into types, when prior systems relied on subjective determinations." (*Id.* at 25). The Magistrate Judge determined that "these alleged improvements are captured in claim 1." (*Id.*). Defendant objects to this recommendation, arguing that claim 1 "does not recite any technical solution" to achieve the objective outlined in the specification, such as "translating audio data into text" or "how to classify data sets for analysis." (D.I. 33 at 6).

Defendant places too high a burden on what the claims must include to sufficiently capture improvements detailed in the specification. To determine whether the "improvements in the specification . . . create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities, . . . [the court must] analyze the asserted claims and determine whether they capture these improvements." *Berkheimer*, 881 F.3d at 1369. This analysis does not require the claims to completely describe the purported improvements or solutions, as Defendant contends, but rather "capture" them. The specification of the '523 patent details a system of objectively analyzing audio segments based on objects formed from voice data and classified into types, when prior systems relied on subjective determinations. ('523 patent, col. 1:50-62, 16:28-32, 18:38-41). The concept of establishing a series of steps to objectively analyze a telephone call may be inventive where, as here, the claimed steps replace a prior subjective process. *See McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("Defendants concede an animator's [prior art] process was driven by subjective determinations rather than specific, limited mathematical rules" of the claimed invention.). Claim 1 captures these purported improvements in its recitation of "analyzing a telephonic communication between one or more customers and a contact center having one or more

agents . . . processing said telephonic communication into a plurality of computer telephony interpretation events; and classifying said plurality of computer telephony interpretation events into a first type and a second, different type." ('523 patent, col. 19:48-59). Thus, there is a factual dispute about whether the invention "describes well-understood, routine, and conventional activities." *Berkheimer*, 881 F.3d at 1369. I therefore overrule Defendant's objection.

### B. The '639 patent

#### 1. *Alice* step one

The Magistrate Judge recommends, "Claim 1 of the '639 patent is drawn to the abstract idea of collecting and classifying data from a customer-salesperson interaction." (D.I. 30 at 27). Plaintiffs object to this recommendation and argue that claim 1 is not directed to an abstract idea because it recites "technical improvements in telephony call processing by determining the complexity of a telephone call using determined 'call attributes.'" (D.I. 32 at 5).

Plaintiffs argue that claim 1 recites a specific improvement to technology because the claim "provides a specific process in computer-based, contact center speech analysis that uses call rules with defined thresholds . . . for objectively handling complex calls and eliminating subjective bias." (*Id.*). Plaintiffs, however, do not show that claim 1 includes limitations describing the call rules. Claim 1 instead articulates the functional steps of receiving, comparing, and generating data in the context of telephonic communications, using standard computer components. Claim 1's use of generic computer components to carry out a claimed abstract idea is not sufficient to render a claim patent eligible. *See Two-Way*, 874 F.3d at 1337-38.

Claim 1 of the '639 patent is directed to the abstract idea of collecting and classifying data from a customer-salesperson interaction. ('639 patent, col. 16:42-65). This focus is reflected in the claim itself, which recites: "A non-transitory computer program for determining the complexity of a telephonic communication received by a contact center" comprising code segments for "receiving" an input transmission and a telephonic communication, a code segment for "determining call attributes," a code segment for "comparing the call rule to the call attributes," and a code segment for "generating" data regarding the complexity of the call and "a graphical user interface for viewing the telephonic communication on display . . . ." (*Id.*). The specification supports this expression of the abstract idea. (*See* '639 patent, col. 2:7-21). "Where, as here, the abstract idea tracks the claim language and accurately captures what the patent asserts to be the focus of the claimed advance over the prior art, characterizing the claim as being directed to an abstract idea is appropriate." *Solutran*, 931 F.3d at 1168 (cleaned up).

In determining whether a claim constitutes an abstract idea, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. The language of claim 1 of the '639 patent is like the claim language at issue in *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016). The claim language in *Symantec* recited a receipt mechanism for email messages, a database of business rules used to control delivery of the email messages, a rule engine to couple the received email message with the applicable business rules, and a distribution mechanism to apply at least one action from the rule engine to control delivery of the email messages. *Symantec*, 838 F.3d at 1316-17. The Federal Circuit held that these claims were abstract because screening communications based on certain identities was a well-known, fundamental practice. *Id.* at 1318. The elements of claim 1 of the '639 patent are comparable to those in *Symantec* in

the context of telephonic communications instead of email messages. Thus, the system described in claim 1 of the '639 patent is consistent with claims that the Federal Circuit found to be abstract. Further, the specification of the '639 patent states, "It is known to utilize telephone call centers to facilitate the receipt, response and routing of incoming telephone calls relating to customer service, retention, and sales. It is also known to use a web based system to facilitate requests and inquiries related to customer service." ('639 patent, col. 1:23-27). Claim 1 of the '639 patent is thus directed to an abstract idea. I therefore overrule Plaintiffs' objection.

### 2. *Alice* **step two**

The Magistrate Judge recommends that I deny Defendant's motion to dismiss claim 1 of the '639 patent because there is a factual dispute regarding whether the invention "describes well-understood, routine, and conventional activities." (D.I. 30 at 31-32). The Magistrate Judge determined that Plaintiffs' amended complaint contains "plausible and specific factual allegations that aspects of the claims are inventive" that "are sufficient" to state a claim on a motion to dismiss. (*Id.* at 31). The Magistrate Judge concluded that the specification "describes a system for objectively analyzing the call attributes by applying specific call rules based on those attributes, when prior systems relied on subjective determinations." (D.I. 30 at 31). The Magistrate Judge determined that "these alleged improvements are captured in claim 1." (*Id.*). Defendant objects to this recommendation, arguing that claim 1 "does not capture any inventive concept." (D.I. 33 at 6). Defendant continues that claim 1 "concerns nothing more than the automation of [the] process" of a call center answering a customer's inquiries and directing the customer to the appropriate individual. (*Id.*).

Defendant places too high a burden on what the claims must include to sufficiently capture improvements detailed in the specification. To determine whether the "improvements in

the specification . . . create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities, . . . [the court must] analyze the asserted claims and determine whether they capture these improvements." *Berkheimer*, 881 F.3d at 1369. This analysis does not require the claims to completely describe the purported improvements or solutions, as Defendant contends, but rather "capture" them.

The specification of the '639 patent details a system of objectively analyzing the call attributes by applying specific call rules based on those attributes, when prior systems relied on subjective determinations. ('639 patent, col. 1:23-63, 2:7-41). The concept of establishing a series of steps to objectively analyze a telephone call may be inventive where, as here, the claimed steps replace a prior subjective process. *See McRo*, 837 F.3d at 1314 ("Defendants concede an animator's [prior art] process was driven by subjective determinations rather than specific, limited mathematical rules" of the claimed invention.). Claim 1 captures these purported improvements in its recitation of "determining the complexity of a telephonic communication received by a contact center" comprising code segments for receiving a predetermined call rule and a telephonic communication, "determining call attributes associated with the telephonic communication," "comparing the call rule to the call attributes," and generating data showing the complexity of the call and a graphical user interface to display the call data. ('639 patent, col. 16:42-65). Thus, there is a factual dispute about whether the invention "describes well-understood, routine, and conventional activities." *Berkheimer*, 881 F.3d at 1369. I therefore overrule Defendant's objection.

## III.  CALL EVALUATION PATENTS

### A.  The '872 patent

#### 1.  *Alice* step one

The Magistrate Judge recommends, "Claim 1 of the '872 patent is drawn to the abstract idea of evaluating customer-salesperson interactions." (D.I. 30 at 33). Plaintiffs object to this recommendation and argue that claim 1 is not directed to an abstract idea because it "provides specific rules for achieving a particular solution to a technical problem." (D.I. 32 at 6). Plaintiffs, however, do not show that claim 1 includes limitations that describe these rules. Claim 1 instead articulates the functional steps of "retrieving, analyzing, quantitively rating, and automatically pushing critical call data." (D.I. 22 at 16); *see Two-Way*, 874 F.3d at 1337.

Claim 1 of the '872 patent is directed to the abstract idea of evaluating customer-salesperson interactions. ('872 patent, col. 14:37-58). This focus is reflected in the claim itself, which recites: "A computer-implemented method for performing a quality evaluation" comprising: (1) "accepting a definition of a quality task associated with a predefined evaluation form," (2) "activating the quality task upon detecting breaching of a predefined key performance indicator (KPI)," (3) selecting an "interaction recording[] for evaluations," (4) "associating the . . . interaction recording[] with the predefined evaluation form," (5) "displaying a graphical representation of the . . . interaction recording[] and the evaluation form," (6) "receiving evaluation results," and (7) "performing at least one predefined action based on the results." (*Id.*). The specification supports this expression of the abstract idea. (*See* '872 patent, Abstract). "Where, as here, the abstract idea tracks the claim language and accurately captures what the patent asserts to be the focus of the claimed advance over the prior art, characterizing the claim as being directed to an abstract idea is appropriate." *Solutran*, 931 F.3d at 1168 (cleaned up).

In determining whether a claim constitutes an abstract idea, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. Claim 1 of the '872 patent is like the claim at issue in

*Two-Way Media*, which claimed the functional results of "converting," "routing," "controlling," "monitoring," and "accumulating records." 874 F.3d at 1337. Similarly, claim 1 of the '872 patent recites the steps of activating, selecting, associating, displaying, receiving, and performing tasks using generic computer components. Further, the Federal Circuit has held that claims directed to collecting, displaying, and manipulating data are abstract. *See Intellectual Ventures I LLC c. Capital One Fin. Corp.*, 850 F.3d 1132, 1340 (Fed. Cir. 2017) (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014)). The system described in claim 1 of the '872 patent is consistent with claims that the Federal Circuit found to be abstract. Claim 1 of the '872 patent is thus directed to an abstract idea. I therefore overrule Plaintiffs' objection.

### 2. *Alice* step two

The Magistrate Judge recommends that I deny Defendant's motion to dismiss claim 1 of the '872 patent because there is a factual dispute regarding whether the invention "describes well-understood, routine, and conventional activities." (D.I. 30 at 37). The Magistrate Judge determined that Plaintiffs' amended complaint contains "plausible and specific factual allegations that aspects of the claims are inventive" that "are sufficient" to state a claim on a motion to dismiss. (*Id.* at 36). The Magistrate Judge concluded that the specification "describes a method to eliminate the need for random selection in call evaluations, which was ineffective because quality managers could not select calls based on a specific agent [during] a specific time period." (D.I. 30 at 36). The Magistrate Judge determined that "these alleged improvements are captured in claim 1." (*Id.* at 37). Defendant objects to this recommendation, arguing that claim 1 "concerns a computer-implemented automated method for evaluating a salesperson's performance." (D.I. 33 at 8). Defendant continues that "the mere automation of a process

previously performed by humans cannot transform an abstract idea into a patent-eligible inventive concept." (*Id.* at 9).

Defendant argues that the conclusion that the claim does not recite any "specific improvement to technology" at *Alice* step one precludes a determination of an inventive concept at *Alice* step two. (*See* D.I. 33 at 9). This cannot be the case because the purpose of *Alice* step two is that it only comes after a determination that a claim is directed to an abstract idea. *Alice*, 573 U.S. at 218-19. Concluding that a claim does not recite any specific improvement to technology is a way of determining that a claim is directed to an abstract idea. *See Enfish*, 822 F.3d at 1336 (holding that the claims at issue were not abstract because "they are directed to a specific improvement to the way computers operate"). Thus, *Alice* step two would be moot if a determination that a claim does not recite any specific improvement to technology at step one would preclude a determination of an inventive concept at step two. Further, the Federal Circuit has resolved the *Alice* inquiry in a similar way to that of the Magistrate Judge's Report and Recommendation. In *Cellspin*, the Federal Circuit determined that the claims at issue did not recite technological improvements at *Alice* step one, but "[could not] conclude that the asserted claims lack an inventive concept" at step two. 927 F.3d at 1317-18.

The specification of the '872 patent describes a system for objectively selecting calls for quality review based on predefined parameters, when prior systems relied on subjective determinations. ('872 patent, col. 3:3-46). Claim 1 captures these purported improvements in its recitation of applying quality task parameters after a breach of key performance indicators is detected and displaying the results of the automated evaluation form to a reviewer. ('872 patent, col. 14:37-58). Thus, there is a factual dispute about whether the invention "describes well-

understood, routine, and conventional activities." *Berkheimer*, 881 F.3d at 1369. I therefore overrule Defendant's objection.

## B. The '248 patent

### 1. *Alice* step one

The Magistrate Judge recommends, "Claim 1 of the '248 patent is drawn to the abstract idea of evaluating customer-salesperson interactions." (D.I. 30 at 38). Plaintiffs object to this recommendation and argue that claim 1 is not directed to an abstract idea because it "recites an eligible process for performing an objective assessment or rating of the quality, satisfaction or appropriateness of the interaction between an agent and a customer." (D.I. 32 at 6). Plaintiffs, however, do not show that claim 1 includes limitations that recite rules for "objectively determining caller satisfaction based on caller event data, enabling computers to engage [in] tasks not capable of being performed by humans." (*Id.* at 6-7).

Claim 1 instead articulates the functional steps of receiving, extracting, generating, and determining using generic computer components, similar to the claim language at issue in *Two-Way*. The Federal Circuit found the language in *Two-Way* to be abstract because it did not describe how to achieve the results in a nonabstract way. 874 F.3d at 1337-38. The Federal Circuit has held that claims directed to collecting, displaying, and manipulating data are abstract. *See Capital One*, 850 F.3d at 1340 (citing *Content Extraction*, 776 F.3d at 1347). The system described in claim 1 of the '248 patent is therefore consistent with claims that the Federal Circuit found to be abstract.

Claim 1 of the '248 patent is directed to the abstract idea of evaluating customer-salesperson interactions. ('248 patent, col. 28:41-54). This focus is reflected in the claim itself, which recites: "A non-transitory computer readable medium . . . for implementing a method of

analyzing caller interaction events" comprising: (1) "receiving a caller interaction event," (2) "extracting caller event data from the caller interaction event," (3) "generating a report displaying" the caller event data, and (4) "determining customer satisfaction" based on the caller event data. (*Id.*). The specification supports this expression of the abstract idea. (*See* '248 patent, col. 24:6-25). "Where, as here, the abstract idea tracks the claim language and accurately captures what the patent asserts to be the focus of the claimed advance over the prior art, characterizing the claim as being directed to an abstract idea is appropriate." *Solutran*, 931 F.3d at 1168 (cleaned up). Claim 1 of the '248 patent is thus directed to an abstract idea. I overrule therefore Plaintiffs' objection.

### 2. *Alice* step two

The Magistrate Judge recommends that I deny Defendant's motion to dismiss claim 1 of the '248 patent because there is a factual dispute regarding whether the invention "describes well-understood, routine, and conventional activities." (D.I. 30 at 41). The Magistrate Judge determined that Plaintiffs' amended complaint contains "plausible and specific factual allegations that aspects of the claims are inventive" that "are sufficient" to state a claim on a motion to dismiss. (*Id.* at 40). The Magistrate Judge concluded that the specification "describes a need for a system that analyzes the underlying behavioral characteristics of a customer and agent so that data relating to these behavioral characteristics can be used for subsequent analysis and training." (D.I. 30 at 41). The Magistrate Judge determined that the specification articulates a solution to this problem "by using a computer program to objectively identify behavioral signifiers based on linguistic patterns and non-linguistic indicators." (*Id.*). The Magistrate Judge determined that "these alleged improvements are captured in claim 1." (*Id.* at 41). Defendant

objects to this recommendation, arguing that claim 1 "claims nothing more than the automation of judging customer satisfaction with generic computer technology." (D.I. 33 at 10).

Defendant argues that the conclusion that the claim does not recite any "specific improvement to technology" at *Alice* step one precludes a determination of an inventive concept at *Alice* step two. (*See* D.I. 33 at 10). This cannot be the case because the purpose of *Alice* step two is that it only comes after a determination that a claim is directed to an abstract idea. *Alice*, 573 U.S. at 218-19. Concluding that a claim does not recite any specific improvement to technology is a way of determining that a claim is directed to an abstract idea. *See Enfish*, 822 F.3d at 1336 (holding that the claims at issue were not abstract because "they are directed to a specific improvement to the way computers operate"). Thus, *Alice* step two would be moot if a determination that a claim does not recite any specific improvement to technology at step one would preclude a determination of an inventive concept at step two. Further, the Federal Circuit has resolved the *Alice* inquiry in a similar way to that of the Magistrate Judge's Report and Recommendation. In *Cellspin*, the Federal Circuit determined that the claims at issue did not recite technological improvements at *Alice* step one, but "[could not] conclude that the asserted claims lack an inventive concept" at step two. 927 F.3d at 1317-18.

Defendant objects that claim 1 "neither captures the concept of subjecting 'call data to a behavioral model,' nor describes any 'behavioral model for deducing and categorizing human behaviors.'" (D.I. 33 at 10). Defendant places too high a burden on what the claims must include to sufficiently capture improvements detailed in the specification. To determine whether the "improvements in the specification . . . create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities, . . . [the court must] analyze the asserted claims and determine whether they capture these improvements."

*Berkheimer*, 881 F.3d at 1369.  This analysis does not require the claims to completely describe the purported improvements or solutions, as Defendant contends, but rather "capture" them.

The specification of the '248 patent describes a method of objectively identifying behavioral signifiers based on linguistic patters and non-linguistic indicators.  ('248 patent, col. 21:53-22:3).  The concept of establishing a series of steps to objectively analyze a telephone call may be inventive where, as here, the claimed steps replace a prior subjective process.  *See McRo*, 837 F.3d at 1314 ("Defendants concede an animator's [prior art] process was driven by subjective determinations rather than specific, limited mathematical rules" of the claimed invention.).  Claim 1 captures these purported improvements in its recitation of capturing and processing call data to determine customer satisfaction.  ('248 patent, col. 28:41-54).  Thus, there is a factual dispute about whether the invention "describes well-understood, routine, and conventional activities."  *Berkheimer*, 881 F.3d at 1369.  I therefore overrule Defendant's objection.

### C.     The '400 patent

#### 1.   *Alice* step one

The Magistrate Judge recommends, "Claim 1 of the '400 patent is drawn to the abstract idea of evaluating customer-salesperson interactions."  (D.I. 30 at 42).  Plaintiffs object to this recommendation and argue that claim 1 is not directed to an abstract idea because it "recites an eligible process [in the technical field of call center analytics] by analyzing electronic communications, recognizing behavioral patterns, and enhancing interactions based on these assessments."  (D.I. 32 at 7).  Plaintiffs describe the improvement as mining data from sources such as social media feeds and web data, and analyzing it with voice data to generate behavioral

assessments of customers. (*Id.*). This description, however, suggests that claim 1 is directed to functional steps.

Claim 1 articulates the functional steps of receiving, generating, identifying, and displaying using generic computer components, similar to the claim language at issue in *Two-Way*. The Federal Circuit found the language in *Two-Way* to be abstract because it did not describe how to achieve the results in a nonabstract way. 874 F.3d at 1337-38. The Federal Circuit has held that claims directed to collecting, displaying, and manipulating data are abstract. *See Capital One*, 850 F.3d at 1340 (citing *Content Extraction*, 776 F.3d at 1347). The system described in claim 1 of the '400 patent is consistent with claims that the Federal Circuit has found to be abstract.

Claim 1 of the '400 patent is directed to the abstract idea of evaluating customer-salesperson interactions. ('400 patent, col. 32:18-43). This focus is reflected in the claim itself, which recites: "A customer analysis method for analyzing electronic customer communication data and generating behavioral assessment data" comprising the steps of: (1) receiving electronic customer communication data, (2) generating a text file from collected voice data, (3) identifying a customer associated with the communication, (4) generating behavioral assessment data based on the text file and social media data, and (5) displaying instructions to the user based on the behavioral assessment data. (*Id.*). The specification supports this expression of the abstract idea. (*See* '400 patent, col. 2:4-12). "Where, as here, the abstract idea tracks the claim language and accurately captures what the patent asserts to be the focus of the claimed advance over the prior art, characterizing the claim as being directed to an abstract idea is appropriate." *Solutran*, 931 F.3d at 1168 (cleaned up). Claim 1 of the '400 patent is thus directed to an abstract idea. I therefore overrule Plaintiffs' objection.

## 2. *Alice* step two

The Magistrate Judge recommends that I deny Defendant's motion to dismiss claim 1 of the '400 patent because there is a factual dispute regarding whether the invention "describes well-understood, routine, and conventional activities." (D.I. 30 at 46). The Magistrate Judge determined that Plaintiffs' amended complaint contains "plausible and specific factual allegations that aspects of the claims are inventive" that "are sufficient" to state a claim on a motion to dismiss. (*Id.* at 45). The Magistrate Judge concluded that the specification "describes the generation of behavioral assessment data by analyzing electronic customer communication data." (D.I. 30 at 45). The Magistrate Judge determined that the "alleged improvements" to the objective analysis of a customer service interaction "are captured in claim 1." (*Id.* at 46). Defendant objects to this recommendation, arguing that claim 1 "does not include any technical solution or inventive step." (D.I. 33 at 11).

Defendant argues that there is a conflict between the Magistrate Judge's recommendation that claim 1 of the '400 patent is directed to an abstract idea at *Alice* step one and the Magistrate Judge's recommendation that the claim captures an inventive concept articulated in the specification at *Alice* step two. (*See id.* at 11). The Federal Circuit, however, has resolved the *Alice* inquiry in a similar way to that of the Magistrate Judge's Report and Recommendation. In *Cellspin*, the Federal Circuit determined, at *Alice* step one, that the claims at issue were directed toward the abstract idea of automating a process and that the specification acknowledged this process was previously-known and able to be executed by humans. 927 F.3d at 1315–16. At *Alice* step two, the Federal Circuit concluded that the plaintiff "made specific, plausible factual allegations about why aspects of its claimed inventions were not conventional," which, accepted as true, precluded the determination that the asserted claims lacked an inventive concept. *Id.* at

1317–18.  The Magistrate Judge's recommendation that claim 1 of the '400 patent is directed to an abstract idea similarly does not prevent the recommendation that claim 1 captures an inventive concept described in the specification.

The specification of the '400 patent describes the generation of behavioral assessment data by analyzing electronic customer communication data.  ('400 patent, col. 12:12-25).  The concept of establishing a series of steps to objectively analyze a customer service interaction may be inventive where, as here, the claimed steps replace a prior subjective process.  *See McRo*, 837 F.3d at 1314 ("Defendants concede an animator's [prior art] process was driven by subjective determinations rather than specific, limited mathematical rules" of the claimed invention.).  Claim 1 captures these purported improvements in its recitation of analyzing electronic customer communication data and generating behavioral assessment data based on data mined from social media to objectively assess a call agent's performance and customer satisfaction.  ('400 patent, col. 32:18-43).  Thus, there is a factual dispute about whether the invention "describes well-understood, routine, and conventional activities."  *Berkheimer*, 881 F.3d at 1369.  I therefore overrule Defendant's objection.

## IV.    CONCLUSION

The Magistrate Judge's Report and Recommendation (D.I. 30) is **ADOPTED**.  Defendant's partial motion to dismiss pursuant to Rule 12(b)(6) (D.I. 18) is **DENIED**.

Entered this 30th day of March, 2020

/s/ Richard G. Andrews
United States District Judge